UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ELIZABETH MARGRABE

              Plaintiff,

       -against-

SEXTER & WARMFLASH, P.C., DAVID
WARMFLASH, and MICHAEL PRESENT,

            Defendants.

----------------------------------------------------------x

**COMPLAINT IN
A CIVIL ACTION**

**07 CIV. 2798**

Trial by Jury Is
Demanded

WP4

Plaintiff, ELIZABETH MARGRABE ("BETTY") by her attorneys,

Greenberg & Massarelli, LLP, as and for their Complaint in a civil action

allege as follows:

## JURISDICTION AND VENUE

1.    At the time of the commencement of this action and for all

times thereafter, the plaintiff ELIZABETH MARGRABE ("BETTY") was

domiciled within the State of Maryland and was a citizen of the State of

Maryland within the meaning of 28 USC §1332.

2.    Upon information and belief, defendant SEXTER &

WARMFLASH, P.C. ("SEXTER") is a professional corporation organized

1

and existing under and by virtue of the laws of the State of New York and for all relevant times maintained offices for the practice of law at 115 Broadway, New York, New York and was a citizen of the Sate of New York within the meaning of 28 USC §1332.

3.     Upon information and belief, defendant DAVID WARMFLASH ("WARMFLASH") is an attorney duly licensed to practice as an attorney and counselor at law in the State of New York and resides at 186 Riverside Drive, New York, New York and is a citizen of New York within the meaning of 28 USC §1332.

4.     Upon information and belief, at all times hereinafter mentioned WARMFLASH was a partner in the law firm SEXTER.

5.     Upon information and belief, at all times hereinafter mentioned WARMFLASH was a member of the law firm SEXTER.

6.     Upon information and belief, at all times hereinafter mentioned WARMFLASH was a shareholder of the law firm SEXTER.

7.     Upon information and belief, defendant MICHAEL PRESENT ("PRESENT") is an attorney duly licensed to practice as an attorney and counselor at law in the State of New York and resides at 215 West 92nd Street, New York, New York and is a citizen of New York within the meaning of 28 USC §1332.

8.    Upon information and belief, at all times hereinafter mentioned PRESENT was a partner in the law firm SEXTER.

9.    Upon information and belief, at all times hereinafter mentioned PRESENT was a member of the law firm SEXTER.

10.    Upon information and belief, at all times hereinafter mentioned PRESENT was employed by the law firm SEXTER.

11. The damages sustained by BETTY exceed $75,000 on each claim set forth in this Civil Complaint.

12. This court has subject matter jurisdiction pursuant to 28 USC §1332(a) (1).

13. This court has venue to hear this action pursuant to 28 USC §1391(a) (1) and (2).

## FIRST CLAIM
## LEGAL MALPRACTICE

14.    Prior to 2000, BETTY, BETTY'S brother, Anthony J. Rusciano, III ("Tony"), and cousin, Anthony J. Rusciano II ("A.J."), each individually owned certain equitable interests in limited partnerships and

corporations ("Rusciano Companies"), which Rusciano Companies were operated, controlled and managed by A.J.

15.    On or about February 4, 2000 BETTY and Tony entered into a retainer agreement with SEXTER, prepared by SEXTER, to represent BETTY and Tony as joint clients to effectuate a sale of their interests in the Rusciano Companies to A.J. and in this retainer BETTY and Tony agreed to share equally the proceeds of any sale of the Rusciano Companies.

16.    On or about March 9, 2001, defendant WARMFLASH, within the scope of his relationship with SEXTER, recommended that the best course of action to bring about the sale would be to commence litigation against A.J.

17.    On April 10, 2001, SEXTER and BETTY agreed to a retainer, prepared by SEXTER that superseded the previous retainer dated February 4, 2000 in which retainer of April 10, 2001, BETTY agreed to share equally with Tony the proceeds of any sale or benefits derived from the Rusciano companies.

18.    On April 5, 2001, SEXTER and Tony agreed to a retainer, prepared by SEXTER that superseded the previous retainer dated February 4, 2000 in which retainer of April 10, 2001, Tony agreed to share equally

with BETTY the proceeds of any sale or benefits derived from the Rusciano companies.

19.    On or about June 25, 2001 SEXTER commenced a shareholder derivative action in the Supreme Court of the State of New York, Westchester County on behalf of BETTY and Tony, as joint plaintiffs against A.J., which action was entitled Elizabeth Margrabe and Anthony J. Rusciano, III as shareholders of Rusciano & Son Corp., Secor Lane Corp. and Vinrus Corp, et al. v. Anthony J. Rusciano, II, Rusciano & Son Corp., Vinrus Corp., Secor Lane Corp. and subsidiaries, et al. under index number 10032/01 ("the Rusciano Lawsuit").

20.    On June 18, 2003, WARMFLASH and PRESENT within the scope of their relationship with SEXTER advised BETTY that if she accepted an offer by A.J. to settle the Rusciano Lawsuit by agreeing to sell her interest in the Rusciano Companies to A.J. for $4,187,500, plus her share of certain tax certiorari refunds due the following Rusciano Companies Rusciano & Son Corp.: Secor Lane Corp.; PER Building Corp.; VER Building Corp.; and Vinrus Corp., ("Tax Certiorari Refunds"), she would receive the first payment from A.J. in the amount of $625,000, plus her share of the Tax Certiorari Refunds on or before August 15, 2003.

21.    On June 18, 2003, relying upon the advice of WARMFLASH and PRESENT that were she to accept A.J.'s offer to settle the Rusciano Lawsuit, she would receive at least $625,000, plus her share of the Tax Certiorari Refunds on or before August, 15, 2003, BETTY did agree to sell her interest in the Rusciano Companies to A.J. for $4,187,500, plus her share of the Tax Certiorari Refunds, by stating under oath in open court in the Rusciano Lawsuit that she did so agree.

22.    BETTY did not receive any money in consideration for her sale of the Rusciano Companies until May 10, 2004, as a result of the legal malpractice of SEXTER.

23.    On May 10, 2004, BETTY and Tony each executed agreements and other documents at a closing ("The Closing") formalizing the sale of BETTY and Tony's interests in the Rusciano Companies for which sale Betty received the following consideration:  $ 625,000 plus her share of one tax certiorari refund from Rusciano & Son Corp. in the sum of $50,581.55.

24.    BETTY would not have sold her interest in the Rusciano Companies on June 18, 2003 for $4,187,500, plus her share of the Tax Certiorari Refunds had she been told that she would not receive any money from her sale until May 10, 2004 and that the Tax Certiorari Refunds from Secor Lane Corp., PER Building Corp., VER Building Corp., and Vinrus

Corp., which SEXTER had advised her she would share in were excluded from the settlement.

25.    As a result of SEXTER'S legal malpractice—which included SEXTER'S misrepresentation that BETTY would receive $625,000 in cash, her share of the Tax Certiorari Refunds, and notes executed by A.J. in her favor for $3,562,500 on or before August 15, 2003, BETTY sold her interest in the Rusciano Companies to A.J. for $4,187,500, plus her share of the Tax Certiorari Refunds.

26.    BETTY'S interest in the Rusciano Companies---which she sold for $4,187,500 plus her share of the Tax Certiorari Refunds on June 18, 2003--had a fair market value of $6,235,781.31 on that date.

27.    That the legal malpractice of SEXTER, WARMFLASH and PRESENT-- failure to exercise that degree of skill and knowledge commonly possessed by members of the legal profession-- included inter alia as follows: misrepresenting to BETTY that she would receive $625,000 in cash, her share of the Tax Certiorari Refunds, and notes executed by A.J. in her favor for $3,562,500 on or before August 15, 2003; failure to adequately prepare for the trial scheduled for June 18, 2003; advising BETTY to agree to sell her interest in the Rusciano Companies pursuant to a settlement agreement placed on the record in open court by A.J.'s counsel

7

which was flawed in (1) failing to provide for interest until A.J. executed a contract, (2) failing to provide compensation to BETTY for the Tax Certiorari Refunds from Secor Lane Corp., PER Building Corp., VER Building Corp. and Vinrus Corp., (3) failing to set forth an allocation for tax purposes as to what portion of the proceeds BETTY would receive would be treated as ordinary income, (4) failing to require A.J. to account for the management of trusts where BETTY and Tony were beneficiaries, and in (5) failing to provide adequate security guaranteeing future payments by A.J.

28.    But for the legal malpractice of SEXTER on June 18, 2003 BETTY would not have sold her interest for the sum of $4,187,500.

29.    By reason of the foregoing BETTY has been damaged in the sum of not less than $2,132,031.50, not including the costs and disbursements of this action and pre-judgment interest pursuant to N.Y. CPLR §5001.

## SECOND CLAIM

## LEGAL MALPRACTICE

30.    BETTY repeats and re-alleges by reference each and every previous allegation of the complaint as if more fully set forth herein.

31.    But for the legal malpractice of SEXTER on June 18, 2003 BETTY would not have been required to expend not less than $204,190.14

in legal fees, which would have otherwise been unnecessary, from the period of August 15, 2003 through May 10, 2004 in order to permit her to receive the $4,187,500 from the sale of her interest in the Rusciano Companies and a recovery of a portion of the Tax Certiorari Refunds that SEXTER represented BETTY would have received on or before August 30, 2004.

32.    Upon the foregoing, BETTY has been damaged in the sum of not less than $204,190.14, not including the costs and disbursements of this action and pre-judgment interest pursuant to N.Y. CPLR §5001.

## THIRD CLAIM

## BREACH OF FIDUCIARY DUTY

33.    BETTY repeats and re-alleges by reference each and every previous allegation of the complaint as if more fully set forth herein.

34.    On April 9, 2004 BETTY terminated SEXTER's representation of BETTY in the Rusciano Lawsuit for cause by transmitting correspondence ("Discharge Letter") to SEXTER—which Discharge Letter described BETTY'S reasons for terminating SEXTER as her counsel and which Discharge Letter was a client secret within the meaning of NYCRR §1200.19 [DR §4-101].

35.    BETTY signed the Discharge Letter which was transmitted on April 9, 2004 to the following: (a)  SEXTER; (b) Tony (BETTY's joint client with SEXTER);  (c) Philip Halpern, Esq. ("Halpern') (BETTY'S private counsel);  and (d) Harry Lewis, Esq. ("Lewis") (BETTY's private counsel).

36.    At the Closing on May 10, 2004, an escrow agreement ("Escrow Agreement') was executed by and between BETTY and SEXTER pursuant to which $121,659.74 ("Escrow Funds") were escrowed pending a judicial determination as to whether SEXTER was entitled to any portion of the Escrow Funds, in satisfaction of SEXTER's disputed claim for legal fees allegedly due and owing to SEXTER by BETTY.

37.    On May 14, 2004, pursuant to the Escrow Agreement SEXTER commenced a §475 New York Judiciary Law proceeding ("Fee Dispute") against BETTY in the New York Supreme Court, Westchester County.

38.    SEXTER, WARMFLASH, and PRESENT had a fiduciary duty to maintain the secrecy of BETTY's client secrets as BETTY's former attorneys.

39.    On or about May 17, 2004, SEXTER, WARMFLASH, AND PRESENT filed a defamation action with Index Number 107569/2004 (the "Defamation Action") in New York County Supreme Court against BETTY

and her husband, William Margrabe, demanding "in no event less than one million dollars ($1,000,000)" damages.

40.    The Verified Complaint in the Defamation Action, signed by PRESENT as counsel to SEXTER and verified by WARMFLASH, contained quotations from the Discharge Letter, and the Discharge Letter was annexed to the Verified Complaint as Exhibit "A".

41.    The commencement and prosecution of the Defamation Action by SEXTER, WARMFLASH, and PRESENT was a breach of fiduciary duty by SEXTER, WARMFLASH, and PRESENT to their former client BETTY, in disclosing the Discharge Letter---BETTY'S client secret—without her consent for their benefit as the ground for the Defamation Action.

42.    WARMFLASH and PRESENT disclosed additional client secrets during their examinations before trial held in the Defamation Action.

43.    During SEXTER's representation of BETTY in the Rusciano Lawsuit--- SEXTER acted in conflict with the interests of their client BETTY in favor of the interests of their joint client Tony in such acts *inter alia*, as: WARMFLASH'S refusing to follow BETTY's instruction not to schedule a closing on the date proposed by SEXTER, and WARMFLASH'S making a loan (undisclosed to BETTY and without her permission and consent in violation of various sections of the New York

11

Code of Professional Conduct) to Tony while SEXTER was representing both BETTY and Tony.

44.    The breaches of fiduciary duty by SEXTER, WARMFLASH and PRESENT – in the commencement and prosecution of the Defamation Action and acting in conflict with their client BETTY's interest – was the proximate cause and the substantial contributing factor to damages sustained by BETTY including inter alia the expenditure of substantial sums for legal fees and other expenses incurred by BETTY in defending against the Defamation Action and the §475 Judiciary Law proceeding.

45.    Upon the foregoing, BETTY has been damaged in the sum of not less than $361,964.71, not including pre-judgment interest pursuant to NY CPLR §5001 and the costs and disbursements of this action.

46.    The conduct of SEXTER, WARMFLASH, and PRESENT was gross, willful, and wanton, constituting a basis for recovery of punitive damages by BETTY and BILL in the sum of $1,000,000.

## FOURTH CLAIM

## PRIMA FACIE TORT

47.    BETTY repeats and re-alleges by reference each and every previous allegation of the complaint as if more fully set forth herein.

48.    SEXTER, WARMFLASH and PRESENT, without any excuse or justification, maliciously instituted the Defamation Action against BETTY by using client secrets of their former client BETTY as the basis of the Defamation Action against BETTY --- to coerce BETTY through improper duress—an intentional infliction of harm--to abandon her claim to the Escrow Fund in the Fee Dispute.

49.    SEXTER, WARMFLASH and PRESENT's conduct as here and before alleged constitutes a *prima facie* tort.

50.    That by reason of SEXTER, WARMFLASH, and PRESENT's *prima facie* tort, BETTY was caused special damages, including, but not limited to the expenditure of substantial sums for legal fees and other expenses incurred by BETTY in defending the Defamation Action and damages for the extreme mental distress and anxiety caused to BETTY.

51.    That by reason of the *prima facie* tort of SEXTER, WARMFLASH and PRESENT, BETTY has been damaged in the sum of not less than $180,982.35, not including the costs and disbursements of this action.

52.    The conduct of SEXTER, WARMFLASH, and PRESENT was gross, willful, and wanton, constituting a basis for recovery of punitive damages by BETTY in the sum of $1,000,000.

## FIFTH CLAIM

## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

53.    BETTY repeats and re-alleges each and every allegation of the complaint as if fully set forth herein.

54.    That SEXTER, WARMFLASH and PRESENT engaged in conduct exceeding all bounds of decency in using their position as attorneys to commence and prosecute a Defamation Action against their former client BETTY for the sole purpose of causing BETTY extreme emotional, mental and financial distress and hardship so as to cause BETTY to abandon her claim in the Fee Dispute.

55.    That as a result of SEXTER, WARMFLASH and PRESENT'S extreme and outrageous conduct stated above BETTY suffered severe emotional distress.

56.    That by reason of the foregoing, BETTY has suffered extreme emotional distress and anxiety and has been caused to expend substantial sums for legal fees and other expenses incurred by BETTY in defending the Defamation Action.

57.    That by reason of the intentional infliction of emotional distress by SEXTER, WARMFLASH and PRESENT, BETTY has been damaged in

the sum of not less than $180,982.35, not including the costs and disbursements of this action.

58.    The conduct of SEXTER, WARMFLASH, and PRESENT was gross, willful, and wanton, constituting a basis for recovery of punitive damages by BETTY in the sum of $1,000,000.

WHEREFORE, BETTY demands judgment against SEXTER, WARMFLASH and PRESENT and each of them as follows:

On the First Claim for Legal Malpractice in the sum of not less than $2,132,031.50 together with interests and costs from June 18, 2003;

On the Second Claim for Legal Malpractice in the sum of not less than $204,190.14;

On the Third Claim for Breach of Fiduciary Duty in the sum of not less than $361,964.74 compensatory damages and $1,000,000 punitive damages;

On the Fourth Claim for Prima Facie Tort in the sum of not less than $180,982.35 compensatory damages and $1,000,000 punitive damages;

On the Fifth Claim for Intentional Infliction of Emotional Distress in the sum of not less than $180,982.35 compensatory damages and $1,000,000 punitive damages;

along with pre-judgment interest pursuant to NY CPLR §5001 and the

costs and disbursements of this action.

Dated:  April 6, 2007
        Purchase, New York


                                    Greenberg & Massarelli, LLP


                                    By: William Greenberg, Esq. (0808)
                                        2929 Purchase Street
                                        Purchase, New York 10577
                                        (914) 694-1880