```
 1                                                                    1
      NEW YORK STATE SUPREME COURT
 2    COUNTY OF WESTCHESTER : PART WDD
      -----------------------------------------
 3    ELIZABETH MARGRABE and ANTHONY J. RUSCIANO,
      III, as shareholders of RUSCIANO & SON, CORP.,
 4    SECOR LANE CORP. and VINRUS CORP., suing in
      the right of RUSCIANO & SON CORP., SECOR LANE
 5    CORP., and subsidiaries and VINRUS CORP.,
      ELIZABETH MARGRABE and ANTHONY RUSCIANO, III,
 6    Individually,

 7                                    Plaintiffs,
                        -against-
 8
      ANTHONY J. RUSCIANO, II, RUSCIANO & SON CORP,
 9    VINRUS CORP., SECOR LANE CORP., and
      subsidiaries, PVE COMPANY JOINT VENTURE, PVE
10    II CO., TONGENE REALTY COMPANY, and RUSCIANO
      ASSOCIATES, INC.,
11
                                     Defendants.
12    -----------------------------------------
      INDEX NO. 10032/2001
13           Westchester County Courthouse
             111 Martin Luther King Blvd.
14           White Plains, N.Y. 10601
             June 18, 2003
15    B E F O R E:
             HON. W. DENIS DONOVAN,
16           Justice of the Supreme Court

17    A P P E A R A N C E S:
             SEXTER & WARMFLASH, P.C.
18           Attorneys for Plaintiffs
             115 Broadway
19           New York, N.Y. 10006
             BY: DAVID WARMFLASH, ESQ.
20           AND: MICHAEL PRESENT, ESQ.

21           CUDDY & FEDER, LLP
             Attorneys for Defendants
22           90 Maple Avenue
             White Plains, N.Y.  10601-5196
23           BY: JOSHUA J. GRAUER, ESQ.
             AND: JOSHUA E. KIMERLING, ESQ.
24

25                            JOLINDA FIORE,
                              Official Court Reporter
```

PROCEEDINGS                              2

1

2          (In open court.)

3          THE COURT:  Ready to go?

4          MR. GRAUER:  Yes your Honor.  With

5     the consent of plaintiff's attorneys I

6     will endeavor to put on the record the

7     structure and the specific figures

8     agreed to in full settlement of this

9     action and, of course, I invite

10     plaintiffs' attorneys to clarify

11     anything I say afterwards or to correct

12     anything that I say that may be in

13     error.

14          Throughout the morning, with the

15     assistance of the Court, the respective

16     attorneys on behalf of plaintiffs and

17     defendants have met with the Court and

18     endeavored to come up with the basic and

19     fundamental financial terms for a

20     complete and comprehensive settlement of

21     every claim in this action pending in

22     Supreme Court of the State of New York,

23     County of Westchester under index number

24     10032/2001.  And to come up with a

25     complete settlement agreement, which

PROCEEDINGS                        3

1

2      would encompass not only release and

3      discontinuance and dismissal, with

4      prejudice, of every single claim in this

5      action and every other claim of whatever

6      kind or nature whatsoever that could

7      have been interposed in this or any

8      other action by and between plaintiffs

9      and all of the defendants.

10          But, in addition, during the course

11     of the settlement negotiations in this

12     action, the parties have agreed to a buy

13     out of the plaintiffs' interest in every

14     single corporation and partnership and

15     entity that is involved in this action

16     and is a named defendant, including but

17     not limited to Rusciano & Son Corp.,

18     Vinrus Corp., Secor Lane Corp. and

19     subsidiaries, PVE Company Joint Venture,

20     PVE II Company, Tongene Realty Company

21     and Rusciano Associates, Inc.

22          As part of this comprehensive

23     settlement it will be necessary for the

24     attorneys for the respective parties to

25     prepare general releases from all of the

PROCEEDINGS                          4

1

2    plaintiffs to all of the defendants and

3    vice versa excluding, of course, any

4    terms to be performed subject to this

5    stipulation of settlement.  And, in

6    addition, as part of this settlement,

7    there will be a release of Anthony J.

8    Rusciano in connection with any prior

9    performance by Mr. Rusciano as trustee,

10   executor, or any fiduciary capacity

11   under any trust.

12       This is a global and comprehensive

13   settlement of every claim of any kind

14   and nature whatsoever as between the

15   plaintiffs individually and any

16   representative capacity and the

17   defendants with full res judicata and

18   collateral estoppel implications as to

19   all matters.

20       The actual settlement stipulation,

21   the long form settlement stipulation is

22   not being dictated by either attorneys

23   today on the record, as it is

24   contemplated that it will be a long form

25   agreement, which will be subject to

PROCEEDINGS                                     5

1

2      review and approval of the accountants

3      and corporate attorneys for all of the

4      different parties including, in

5      particular, subject to the advice and

6      approval, not as to the figures, but as

7      to allocation and as to the terms of the

8      settlement instruments, the tax advice

9      of Mr. Rusciano's accountant and

10     corporate counsel and, of course, to the

11     tax advice of the defendants-- I'm

12     sorry, of the plaintiffs, rather, and of

13     course the counsel and corporate counsel

14     of the plaintiffs.

15           A material part of this settlement

16     stipulation is the understanding that

17     subject to Mr. Rusciano and the

18     defendants' full performance of all of

19     the terms and provisions of this

20     stipulation and settlement and

21     throughout the period of time that he

22     will be making payments, which I will

23     get to in a moment, it is a material

24     part of this agreement that he will have

25     one hundred percent freedom and control

PROCEEDINGS                          6

1

2      to operate all of the entities and all

3      of the properties.

4           However, we have agreed that on a

5      regular annual basis we shall instruct

6      our accountant, as part of this

7      settlement stipulation, to routinely

8      forward tax returns for each and every

9      entity, defendant entity in this

10     caption, either to the plaintiffs at

11     their home addresses, or if they

12     designate in the settlement stipulation,

13     the law office of David Warmflash.  To

14     whatever address the plaintiffs would

15     like the tax returns to be sent on an

16     annual basis, Mr. Rusciano and the

17     defendant corporations have agreed and

18     partnerships have agreed to do so.

19          So that plaintiffs will be kept, on

20     an annual basis, up to the minute

21     informed as to all of the financial

22     dealings of these entities as reflected

23     in each and every tax return to be filed

24     from and after the date hereof.

25          In addition, Mr. Rusciano and the

1          PROCEEDINGS                    7

2          defendant corporations and partnerships,

3          as a material part of this agreement,

4          will have the freedom to mortgage, lease

5          and sell the properties that are

6          involved in this action, subject, of

7          course, to the fact that with respect to

8          Sun Corp., if the Rusciano Industrial

9          Park were to ever be sold, it's a

10         material condition of the right to sell

11         that particular industrial real estate

12         complex, would be subject to and

13         contingent on full payment, prior to

14         sale or upon sale of any remaining sums

15         due and owing pursuant to this

16         settlement stipulation to any of the

17         plaintiffs.

18              Furthermore, in the event that any

19         of the agreements being reached today

20         would require the approval of the

21         Surrogate's Court because of trusts

22         created under probated wills in the

23         Surrogate's Court of New York State, all

24         of the parties would agree to cooperate

25         and assist in attaining such approval.

PROCEEDINGS                    8

But it shall not be required to obtain
that approval in advance of the signing
of the settlement stipulation and in
advance of the making of the payments to
be made hereunder.

   Furthermore, it is agreed that the
amounts which have been agreed to be
paid by the defendants and by Anthony J.
Rusciano, II personally and to be
personally guaranteed by Mr. Rusciano,
he will have the right at any time to
prepay the agreed sum with no penalty
and, of course, with that prepayment
there would be a savings of interest,
but only of interest.  There will be no
discount for any such prepayment.  But
there will neither be a penalty for such
prepayment and he would save interest by
prepayment.

   Having said that, the financial
terms of this settlement to my
understanding which have been agreed to
by all sides are as follows, the
defendants shall pay to the order of the

PROCEEDINGS                          9

1
2          plaintiffs in whatever proportions
3          plaintiffs' counsel provides on the
4          settlement stipulation, whether it's
5          fifty percent to Elizabeth Margrabe and
6          fifty percent to Anthony Rusciano or as
7          otherwise provided in the settlement
8          stipulation, we will pay the total sum
9          during the term of this settlement of
10         eight million three hundred seventy-five
11         thousand dollars.
12             And this sum will be paid as
13         follows, within thirty days of the
14         signing of the settlement agreements
15         contemplated hereunder, the defendants
16         shall pay to the order of plaintiff's
17         attorneys or as plaintiffs' designate in
18         the settlement stipulation, the total
19         amount of one million two hundred fifty
20         thousand dollars.  That sum will be paid
21         within thirty days of the signing of the
22         settlement agreements and it is, of
23         course, subject to collection as is
24         every single payment obligation set
25         forth herein.

PROCEEDINGS                          10

1

2          The next payment would be due one

3     year thereafter and that payment would

4     be one million one hundred twenty-five

5     thousand dollars.  The remaining

6     payments will each be in the amount of

7     one million dollars and to my

8     understanding would be paid as follows:

9          Assuming that the settlement papers

10    are signed on or about July 1, and I'm

11    using this for purposes of illustration,

12    the next payment would be the sum of one

13    million dollars on or before July 31,

14    2005.  Thereafter, the next payment of

15    one million dollars would be on or

16    before July 31, 2006.  The next payment

17    would be one million dollars on or

18    before July 31, 2007.  The next payment

19    would be one million dollars on or

20    before July 31, 2008.  The next payment

21    would be one million dollars on or

22    before July 31, 2009.  And a final

23    payment of one million dollars would be

24    due six months thereafter.

25          In short, the total payment period

1                        PROCEEDINGS                    11

2    of time is six and a half years.  The

3    total principal payment amount, as I

4    stated previously, and I emphasize the

5    term principal payment amount, is eight

6    million three hundred seventy-five

7    thousand dollars.

8        There are two further components to

9    the payment obligations assumed herein.

10   Next, the payments will be with interest

11   at the rate of 2.5 percent per annum for

12   the first four years.  Of course the

13   first payment of a million two hundred

14   fifty thousand dollars, which is being

15   paid within thirty days of signing,

16   there will be no interest on that

17   payment.  But beginning from the date of

18   that payment and going forward, interest

19   shall accrue on the balance at a rate of

20   2.5 percent per annum for four years.

21       The final two and a half year period

22   of this payment obligation will be at

23   prime and the settlement papers will

24   reflect how the parties will determine

25   what the prime rate is; as to whether

PROCEEDINGS                    12

1

2      they will look to the Wall Street

3      Journal on a particular date, but it

4      will be a typical commercially

5      reasonable mechanism of determining the

6      prime interest rate for the final two

7      and a half years of this six and half

8      year pay out.

9          In addition, it has been agreed by

10     Anthony J. Rusciano and Rusciano & Son

11     Corp., that when a tax certiorari refund

12     is received by Rusciano & Son Corp., in

13     connection with the proceeding commenced

14     and settled by Eugene Albert, MAI and

15     Esq., after payment of attorney's fees,

16     and tenant reimbursements, the

17     defendants, Rusciano & Son Corp. by

18     Anthony J. Rusciano, II agree to

19     immediately remit, after the deduction

20     from the gross sum of the attorney's

21     fees taken by Eugene Albert and after

22     deduction of the tenant reimbursements,

23     Mr. Rusciano shall calculate 37.12

24     percent of those tax certiorari

25     proceeds.  And shall immediately send a

PROCEEDINGS                    13

check for 37.12 percent of those tax
certiorari proceeds to the plaintiffs'
attorneys for distribution to the
plaintiffs.

Let me just take a moment, if I
might, just to confer with Mr. Kimerling
and also with Mr. Rusciano to make sure
that I have stated the basic financial
terms and also, of course, to ask
plaintiffs and plaintiffs' counsel if my
recitation conforms with their memory
and their understanding and subject to
whatever clarification or points
plaintiffs' counsel would like to make,
I would like to specifically request
that the Court voir dire Mr. Rusciano
and the other plaintiffs, so that
there's no ambiguity as to the financial
terms.

THE COURT:  Mr. Present.

MR. PRESENT:  Yes, your Honor,
Michael Present on behalf of the
plaintiffs.  I wanted to clarify just a
couple of points touched by Mr. Grauer.

PROCEEDINGS                    14

1
2    I think he did a good job of touching on
3    the bulk of the terms of the settlement.
4    One area that we disagree in, perhaps we
5    can resolve it, and it's a small point,
6    is that we envision, since we agree on
7    the numbers and we agree on all the
8    terms that the signing and first payment
9    would all occur within thirty days of
10   today.  Rather than the first payment--
11        THE COURT:  Agreeable?
12        MR. GRAUER:  That's fine, subject to
13   plaintiff's attorneys not sending us the
14   documents to be signed twenty nine days
15   from today.  If we receive it within a
16   week, I certainly think three weeks to
17   review it and finalize it with
18   plaintiffs' counsel and get it signed is
19   enough time.  If we receive it in two
20   weeks we might ask for another week.
21        THE COURT:  It will be done quam
22   celerima; swiftly as possible.
23        MR. PRESENT:  The obligation upon
24   consummation of the signing of this long
25   form settlement agreement as envisioned

1                        PROCEEDINGS                    15

2              by Mr. Grauer and payment of the first

3              payment, the remaining obligation for

4              the balance of payments will be

5              evidenced by a promissory note made on

6              be-- made by all of the defendants in

7              favor of the plaintiffs.  That the note

8              is going to be personally guaranteed by

9              the defendant, Anthony J. Rusciano, II.

10             That the note is going to be secured by

11             what the parties have agreed to be in a

12             commercially reasonable manner.

13                  That the-- which will include, but

14             not be limited to holding the documents

15             in escrow, with the law firm as an

16             escrow agent, and that which the parties

17             and their professionals reasonably deem

18             to be proper.  We would also like it

19             understood and agreed that the Court

20             will retain jurisdiction over this

21             matter until such time as this agreement

22             is consummated and obligations are

23             satisfied.

24                  That a breach of the agreement and

25             settlement terms will entitle plaintiffs

1                      PROCEEDINGS                    16

2        to seek regress from the court as

3        contemplated pursuant to the terms of

4        this settlement, i.e. the amount of

5        money they're owed less, in terms of

6        settlement, less what they've been paid.

7        And that jurisdiction would be as

8        against all defendants including the

9        defendant, Anthony Rusciano, II.

10            THE COURT:  Abrogation of those

11       agreements would be met with some kind

12       of sanction, financial or otherwise.

13            MR. PRESENT:  Correct.  That the

14       full force of the Court would be behind

15       the terms of the settlement and a

16       security for the settlement.  In

17       addition to the tax returns that are

18       going to be provided, there will be

19       information provided by Mr. Rusciano

20       personally, typical to what a person who

21       is seeking a loan would be providing to

22       a lender.  And the parties will endeavor

23       to be reasonable, both in what we

24       request and what is provided.

25            THE COURT:  Those reports and 1040,

PROCEEDINGS                    17

1

2      whatever they are, 1040E will all be

3      provided on a yearly basis.

4           MR. GRAUER:  We definitely agreed

5      that on a yearly basis we would provide

6      tax returns.  We're going to provide

7      financial statement of Anthony J.

8      Rusciano upon the signing of the

9      settlement stipulation and that will

10     only be done once and not on an annual

11     basis.  The only tax returns being

12     provided are the tax returns of the

13     entities.  We're not providing personal

14     tax returns at any time.  We're giving

15     one financial statement.  We're signing

16     a personal guarantee.  And annually

17     every single tax return of all of the

18     entities will be provided.

19          MR. PRESENT:  I would suggest in

20     lieu of his personal tax returns we just

21     get an annual financial statement.  That

22     if there's a material change in his

23     personal financial condition from one

24     year to the next, that we be advised and

25     provided with a financial statement.  I

PROCEEDINGS                    18

1

2    don't need to see a new one if there's a

3    dollar difference, but if there's any

4    kind of material change in his financial

5    statement, that we be provided with a

6    new financial statement.

7        MR. GRAUER:  We're happy to agree

8    upon the signing of the settlement

9    stipulation we'll provide a financial

10   statement.  If at any time during the

11   course of this payment obligation

12   there's a material change in financial

13   statement, Mr. Rusciano will agree in

14   the settlement stipulation and it can be

15   so reflected and will be so ordered, he

16   will acknowledge an obligation to so

17   notify the plaintiffs and to submit an

18   updated financial statement.

19       But as long as the payments are made

20   and there's no default, I want to

21   emphasize that a material part of this

22   stipulation of settlement is that he

23   will have one hundred percent control

24   and the ability to operate these

25   businesses without interference and but

PROCEEDINGS                    19

1

2      for that material part of the settlement

3      stipulation, he would not be agreeing to

4      be making the payments which have been

5      agreed to herein.

6          MR. PRESENT:  It's understood and

7      agreed that as long as there is no

8      default in the payments under the note,

9      and let me take a step back.  There will

10     be a promissory note made by the

11     defendants; single promissory note for

12     the entire unpaid principal balance of

13     the settlement agreement which will set

14     forth the interest rate on the entire

15     unpaid portion, pursuant to the terms

16     described by Mr. Grauer, which is two

17     and a half percent on the first four

18     years and prime rate for the balance,

19     provided there's no default under the

20     terms of settlement and under the terms

21     of the note, Mr. Rusciano is free to

22     vote the shares and the interests of the

23     subject defendants, however he chooses.

24         In the event of default, obviously

25     all bets are off and we can seek

PROCEEDINGS                    20

1
2    whatever recourse we're entitled to
3    under the escrow agreement that we
4    envision holding the transfer documents,
5    et cetera.
6        I think I touched upon it but at the
7    closing, what we envision is the signing
8    of a settlement agreement and the
9    promissory note for the entire unpaid
10   balance and the collateral documents,
11   which will provide the security to the
12   plaintiffs in consideration of them
13   selling their interests and surrendering
14   their voting rights pending full
15   payment.
16       THE COURT:  Who's going to maintain
17   the collateral documents?
18       MR. PRESENT:  I think it would be
19   appropriate that my firm hold it as
20   escrow agents.
21       MR. GRAUER:  I think that's
22   absolutely fine.  We would envision as
23   part of this transaction, as payments
24   are made and proportionate interests
25   have been acquired, that whatever

PROCEEDINGS                    21

percentage of stock held in escrow has
been purchased, if you will, would be
released on a straight percentage basis.

MR. PRESENT:  I wouldn't say that's
commercially reasonable.  Whether you
owe a dollar on a mortgage or million
dollars on a mortgage, you don't get a
satisfaction from the bank until it's
paid in full and I wouldn't pretend to--

THE COURT:  I think counsel is
correct.

MR. PRESENT:  And I wouldn't pretend
to be able to figure out--

THE COURT:  He's only holding it in
escrow.

MR. GRAUER:  We're fine on that.  I
was not clear.  As long as the aspect
and I think it's been reemphasized on
the record that from and after the
signing of the settlement stipulation,
as long as we remain in full compliance
we'll have one hundred percent freedom
to operate these entities and I need to
emphasize that because of the rezoning

1              PROCEEDINGS                    22

2       and his need to possibly sell different

3       properties to raise money, to make

4       payments, et cetera.

5           MR. PRESENT:  We understand that and

6       we take our duties as escrow agent

7       seriously.  There won't be any action

8       taken without notice to both parties.

9           THE COURT:  And the agreement to be

10      signed, you want it so ordered by me.

11          MR. GRAUER:  It was my understanding

12      that the settlement stipulation will be

13      so ordered and just so that I'm clear, I

14      think I said it before, when we said a

15      hundred percent control and operation,

16      that includes sale, encumbrance,

17      mortgage, lease.  The only exception

18      being is that there would be no sale of

19      the Sun Corp. property without a

20      complete due on sale clause and payment

21      of any balance remaining to the

22      plaintiffs.

23          THE COURT:  Okay?

24          MR. PRESENT:  Yes.

25          THE COURT:  Is that it gentlemen?

1                    PROCEEDINGS                23
2              MR. GRAUER:  For the record--
3              THE COURT:  Why don't we have a voir
4         dire.
5              MR. PRESENT:  Can we have a moment
6         with our clients?
7              THE COURT:  Sure.
8              (Short pause.)
9              MR. WARMFLASH:  Would the Court
10        consider breaking for lunch?  This has
11        been a long time coming and they would
12        like some time to think it through.
13             MR. GRAUER:  What time should we
14        come back?
15             THE COURT:  Quarter to three. It's
16        important enough.
17             (Luncheon recess taken.)
18                       * * * * *
19   AFTERNOON SESSION.
20             (In open court.)
21             MR. PRESENT:  We can proceed with
22        the voir dire.
23             MR. GRAUER:  If it please the Court,
24        I'd like to have Mr. Rusciano sworn in
25        to ask him a few questions about the

```
 1                    PROCEEDINGS              24
 2          settlement corporation.
 3                   ANTHONY J. RUSCIANO, II, called as
 4      a Defendant herein, having been duly sworn,
 5      testified as follows:
 6                   MR. GRAUER:  Mr. Rusciano, could
 7               you state your full name and address.
 8                   MR. RUSCIANO: Anthony J. Rusciano,
 9               51 Echo Bay Drive, New Rochelle, New
10               York 10803.
11                   MR. GRAUER:  You were a defendant in
12               the present litigation; is that correct?
13                   MR. RUSCIANO: That's correct.
14                   MR. GRAUER:  You're an officer of
15               all of the corporations that are
16               defendants in this action?
17                   MR. RUSCIANO: Yes I am.
18                   MR. GRAUER:  You are also a
19               partner in the partnerships that are
20               defendants in this action?
21                   MR. RUSCIANO: Yes I am.
22                   MR. GRAUER:  You know the
23               plaintiffs who brought this action;
24               correct?
25                   Mr. Rusciano:  Yes I do.
```

PROCEEDINGS                        25

1

2          MR. GRAUER:  You're familiar with

3     the claims in this action?

4          MR. RUSCIANO: I am familiar.

5          MR. GRAUER:  Have you been in

6     court today throughout the settlement

7     negotiations?

8          MR. RUSCIANO: Yes I have.

9          MR. GRAUER:  Did you authorize

10    your attorneys, on your behalf, to

11    engage in settlement negotiations?

12         MR. RUSCIANO: Yes I have.

13         MR. GRAUER:  Did you listen

14    carefully in court to the terms of the

15    settlement stipulation dictated into the

16    record before the lunch break?

17         MR. RUSCIANO: I did.

18         MR. GRAUER:  Did you understand

19    those terms?

20         MR. RUSCIANO:  I do.

21         MR. GRAUER:  Do you agree to those

22    terms of your own free will and accord.

23         MR. RUSCIANO: Yes I do.

24         MR. GRAUER:  Were any of the terms

25    that you listened to in any respect

PROCEEDINGS                    26

1
2    unclear to you?
3         MR. RUSCIANO: No.
4         MR. GRAUER:  Do you understand by
5    agreeing to this stipulation of
6    settlement, you are agreeing to pay the
7    total sum of eight million three hundred
8    seventy five thousand dollars for a
9    release of all of the claims as set
10   forth in the settlement stipulation and
11   for a buy out of the plaintiffs'
12   interest in all of the entities as well?
13        MR. RUSCIANO: Yes I do.
14        MR. GRAUER:  You understand that
15   the payment period is six and a half
16   years?
17        MR. RUSCIANO: Yes I do.
18        MR. GRAUER:  You also understand
19   that pursuant to this settlement you
20   will be delivering a personal guarantee?
21        MR. RUSCIANO: Yes.
22        MR. GRAUER:  And a financial
23   statement at the time of the signing of
24   the guarantee?
25        MR. RUSCIANO:  Yes.

1                    PROCEEDINGS              27

2              MR. GRAUER:  Do you agree to sign

3         and deliver the personal guarantee and

4         the financial statement to plaintiffs'

5         counsel?

6              MR. RUSCIANO: Yes.

7              MR. GRAUER:  Are you aware that in

8         the event of a failure by you to perform

9         any of the terms of this stipulation,

10        including the payment obligations, that

11        the plaintiffs would be entitled to seek

12        to enforce the settlement stipulation,

13        which will be signed by Judge Donovan,

14        by means of contempt or pursuit of

15        financial sanctions?

16             MR. RUSCIANO:  Yes I understand.

17             MR. GRAUER:  Is it also your

18        understanding that pursuant to the

19        settlement you will be able to have,

20        going forward, full control of all of

21        the properties and ability to lease,

22        sell or mortgage those properties

23        without any interference or involvement

24        whatsoever on the part of the

25        plaintiffs?

1                    PROCEEDINGS                    28

2              MR. RUSCIANO: Yes.

3              MR. GRAUER:  Is that a material

4         aspect of your agreement to these

5         settlement terms?

6              Mr. Rusciano:  Absolutely.

7              MR. GRAUER:  Have you been satisfied

8         with the efforts of your counsel

9         throughout this matter?  That's one of

10        the questions generally suggested.

11             MR. RUSCIANO: Yes.

12             MR. GRAUER:  Do you further

13        understand that your ability to have the

14        exclusive control of all of the

15        properties, including the rights to

16        lease, sell or mortgage any of the

17        properties will be so long as you are in

18        compliance with the terms of the

19        settlement stipulation and not in

20        default thereunder?

21             MR. RUSCIANO:  Yes I understand.

22             MR. GRAUER:  Do you have any concern

23        about your ability to perform the terms

24        you agreed to today?

25             MR. RUSCIANO:  No I don't.

PROCEEDINGS                    29

1
2          THE COURT:  Mr. Rusciano, do you
3      feel your attorneys, Mr. Josh Grauer and
4      Mr. Josh Kimerling have done everything
5      possible to represent you as a good
6      trial lawyers?
7          MR. RUSCIANO: Yes I do.
8          THE COURT:  Your very pleased with
9      everything they've done on your behalf.
10         MR. RUSCIANO: Very pleased with
11     everything he's done.
12         THE COURT:  I hate to ask you, but I
13     must ask everyone.  You represent to the
14     Court you're not under the influence of
15     alcohol, or drugs or anything which
16     would in anyway inhibit your ability to
17     understand what you're saying here
18     today?
19         MR. RUSCIANO: Absolutely not.
20         MR. GRAUER:  I'd like the
21     plaintiffs to be--
22         ANTHONY J. RUSCIANO, III called as
23   a Plaintiff herein, having been duly sworn,
24   testified as follows:
25         THE COURT:  State your full name

PROCEEDINGS                          30

please for the record?

    MR. RUSCIANO: Anthony J. Rusciano,
III, 4 Upland Court, South Salem, New
York.

    THE COURT: Mr. Present.

    MR. PRESENT: Yes. Mr. Rusciano,
are you one of the named plaintiffs in
this action?

    MR. RUSCIANO, III: Yes I am.

    MR. PRESENT: Did you direct the
commencement of this action?

    MR. RUSCIANO, III: Yes.

    MR. PRESENT: Did you and your
sister Elizabeth Margrabe retain the law
firm of Sexter & Warmflash to represent
you in this action?

    MR. RUSCIANO, III: Yes.

    MR. PRESENT: Were you in attendance
and did you participate in the
settlement negotiations which transpired
this morning?

    MR. RUSCIANO, III: Yes.

    MR. PRESENT: Were you in court
this morning when Mr. Grauer and myself

PROCEEDINGS                    31

1

2   dictated on the record the terms of the

3   settlement?

4        MR. RUSCIANO, III:  Yes.

5        MR. PRESENT:  Did you understand

6   the terms as they were dictated into the

7   record?

8        MR. RUSCIANO, III:  Yes.

9        MR. PRESENT:  Did you agree with

10  the terms of the settlement.  Are you

11  going to abide by the terms of the

12  settlement?

13       MR. RUSCIANO, III:  Yes.

14       MR. PRESENT:  Do you understand that

15  you will be selling all of your

16  ownership interests in all of the

17  Rusciano family companies as named in

18  the caption of this action?

19       MR. RUSCIANO, III:  Yes I do.

20       MR. PRESENT:  And do you

21  understand that pending full payment,

22  provided the defendants are not in

23  default, you will not have the right to

24  vote your shares of the corporations or

25  your partnership interests pending full

PROCEEDINGS                    32

1

2      payment?

3           MR. RUSCIANO, III:  I understand.

4           MR. PRESENT:  Do you understand in

5      addition to selling your ownership

6      interests, you are settling your

7      derivative claims, the claims which have

8      arose during the term of your ownership

9      of the stock?

10          MR. RUSCIANO, III:  Yes.

11          MR. PRESENT:  And you will not be

12     able to bring another action in

13     connection with these ownership

14     interests for monies you might otherwise

15     have been entitled to receive as

16     shareholder or partner?

17          MR. RUSCIANO, III:  Yes.

18          MR. PRESENT:  I have no further

19     questions.

20          THE COURT:  Anything about this

21     settlement, Mr. Rusciano, that you do

22     not understand?

23          MR. RUSCIANO, III:  No, sir.

24          THE COURT:  Any questions you have

25     to ask of your attorneys?

1                          PROCEEDINGS                    33

2              MR. RUSCIANO, III:  No.

3              THE COURT:  In like manner as I

4      asked the other Mr. Rusciano, you

5      represent to the Court that you're very

6      pleased with everything that your

7      attorney Michael Present has done on

8      your behalf?

9              MR. RUSCIANO, III:  Yes.

10             THE COURT:  All actions taken on

11     your behalf, you are very pleased with

12     everything he has done and he's done it

13     in an attorney-like manner?

14             MR. RUSCIANO, III:  Yes.

15             THE COURT:  I apologize, but I must

16     ask you, do you represent to the Court

17     you're not under the influence of

18     alcohol or drugs or anything which

19     would, in anyway, prevent you from

20     understanding this settlement?

21             MR. RUSCIANO, III:  Yes, sir.

22             THE COURT:  You so represent that

23     you're not under the influence of

24     alcohol or drugs or anything else?

25             MR. RUSCIANO, III:  Yes.

PROCEEDINGS                    34

1

2         MR. GRAUER:  Do you understand that

3    you will be releasing Mr. Rusciano and

4    all of the defendants in every capacity,

5    including any claims against Mr.

6    Rusciano in connection with any services

7    he performed as a trustee under any

8    trusts, under wills for every issue or

9    matter relating to the past?

10        MR. RUSCIANO, III:  Yes.

11        MR. GRAUER:  You've agreed to

12   those terms; correct?

13        MR. RUSCIANO, III: Yes.

14        MR. GRAUER:  And you also

15   understand you will not interfere,

16   subject to Mr. Rusciano performing his

17   obligations under the settlement

18   stipulation, with any of the activities

19   of Mr. Rusciano on behalf of all of the

20   defendants; is that correct?

21        MR. RUSCIANO, III:  Correct.

22        MR. GRAUER:  And you are selling all

23   of your ownership interests in all of

24   the defendant entities; correct?

25        MR. RUSCIANO, III:  Correct.

1                    PROCEEDINGS                    35
2              MR. GRAUER:  Do you further
3         understand that by this settlement you
4         have agreed or the settlement papers
5         will reflect that both defendants and
6         plaintiffs will cooperate in execution
7         of any instrument necessary to carry out
8         this stipulation and the intent of the
9         stipulation, including any future
10        efforts by Mr. Rusciano to lease, sell
11        or mortgage any of the properties
12        subject, of course, to his agreement
13        that if he sells the Sun Corp.
14        properties, the entire remaining debt
15        would be paid in full at or prior to
16        that closing?
17             MR. RUSCIANO, III:  Yes.
18             MR. GRAUER:  I have no further
19        questions.  Thank you very much.
20             ELIZABETH RUSCIANO MARGRABE, a
21   Plaintiff herein, having been duly sworn,
22   testified as follows:
23             THE COURT:  Your full name is
24        Elizabeth Margrabe?
25             THE WITNESS:  Elizabeth Rusciano

1                          PROCEEDINGS                    36

2          Margrabe.

3               THE COURT:  Give us your address.

4               MS. MARGRABE:  31 Priory Lane,

5          Pelham, New York.

6               THE COURT:  Okay.

7               MR. PRESENT:  Miss Margrabe, are you

8          the other plaintiff in this action?

9               MS. MARGRABE:  Yes I am.

10              MR. PRESENT:  Did you, together

11         with your brother, engage my firm,

12         Sexter & Warmflash, to bring this action

13         on your behalf?

14              MS. MARGRABE:  Yes.

15              MR. PRESENT:  Were you in court and

16         in attendance at court today during the

17         terms of the settlement negotiations

18         that went on.

19              MS. MARGRABE: Yes I was.

20              MR. PRESENT:  Were you in court

21         this morning when myself and Mr. Grauer

22         dictated into the record the terms of

23         the settlement of this action?

24              MS. MARGRABE:  Yes.

25              MR. PRESENT:  Did you understand the

1                    PROCEEDINGS                    37

2      terms of the settlement?

3            MS. MARGRABE:  Yes.

4            MR. PRESENT:  Do you have any

5      questions concerning the terms of the

6      settlement?

7            MS. MARGRABE:  No.

8            MR. PRESENT:  Do you understand that

9      by entering into the settlement, you

10     will be selling all of your ownership

11     interests, be they as a shareholder or a

12     partner, whether the shares are owned

13     directly or through-- indirectly through

14     trusts, in all of the Rusciano

15     companies, and I mean partnerships and

16     corporations named in this action?

17           MS. MARGRABE: Yes.

18           MR. PRESENT:  Do you understand in

19     addition to selling your interests,

20     you're settling your derivative claims,

21     any claims that you're bringing

22     individually or on behalf of the

23     companies in connection with monies you

24     could have received as a shareholder or

25     partner during your term of ownership?

1                          PROCEEDINGS                    38

2              MS. MARGRABE:  Yes.

3              MR. PRESENT:  Do you understand by

4       settling this action, you will not be

5       able to bring any additional actions

6       asserting any claims arising from your

7       past ownership of any of these

8       companies?

9              MS. MARGRABE:  Yes.

10             MR. PRESENT:  And that you're

11      settling those claims not only as

12      against the companies themselves, but

13      also as against the defendant, Anthony

14      J. Rusciano, II in terms of management

15      of the company?

16             MS. MARGRABE: Yes.

17             MR. PRESENT:  No further

18      questions.

19             THE COURT:  Mrs. Margrabe, do you

20      feel that your attorneys, Mr. Warmflash

21      and Mr. Present have done everything

22      they possibly could in representing your

23      interests?

24             MS. MARGRABE:  Yes.

25             THE COURT:  You're very pleased with

PROCEEDINGS                          39

1

2      everything they've done on your behalf?

3          MS. MARGRABE:  Yes I am.

4          THE COURT:  Do you realize this is

5      for all time.  You can't come back and

6      say this wasn't fair and equitable.  Do

7      you understand that?

8          MS. MARGRABE:  I do.

9          THE COURT:  Do you until feel that

10     under all the attendant circumstances

11     that the agreement was fair and

12     equitable?

13         MS. MARGRABE:  Yes.

14         THE COURT:  Once again I

15     apologize, but I must ask these

16     questions.  Do you represent to the

17     Court you're not under the influence of

18     alcohol or drugs or anything which, in

19     anyway, would inhibit your ability to

20     understand what you're saying here

21     today?

22         MS. MARGRABE:  Yes.

23         THE COURT:  Yes you're not under

24     the influence?

25         MS. MARGRABE:  I'm not under the

1                           PROCEEDINGS                    40

2       influence.

3            THE COURT:  And yes, you fully

4       understand?

5            MS. MARGRABE: I fully understand.

6            THE COURT:  Anything you wanted to

7       ask your attorneys?

8            MS. MARGRABE:  No.

9            MR. GRAUER:  Can I repeat very

10      briefly, I apologize, the same

11      questions.  You understand that you're

12      releasing Mr. Rusciano in every capacity

13      including as a trustee of any trusts or

14      as an executor under any prior wills

15      connected in any way, shape or form to

16      any family matters by this settlement?

17           MS. MARGRABE:  Yes.

18           MR. GRAUER:  Do you understand, by

19      this settlement, you and your brother

20      and all representatives on your behalf

21      have agreed not to interfere with any of

22      business dealings of any of the

23      defendants and to cooperate in efforts

24      to sell, lease or mortgage any of the

25      properties and that Mr. Rusciano will

1                   PROCEEDINGS                    41

2          have full control subject to his

3          performance of his obligations?

4               MS. MARGRABE: Yes.

5               MR. GRAUER:  Do you agree to sign

6          any reasonable documents prepared by

7          your attorneys or the attorneys for the

8          defendants deemed necessary to carry out

9          spirit and intent of this settlement

10         stipulation?

11              MS. MARGRABE:  Yes.

12              MR. GRAUER:  And you also understand

13         you will have no right to vote, as part

14         of this settlement stipulation, to vote

15         any of your shares?

16              MS. MARGRABE:  Yes.

17              MR. GRAUER:  No further questions,

18         thank you.

19              THE COURT:  No one else to be voir

20         dired?

21              MR. GRAUER:  No.

22              THE COURT:  I want to thank all

23         counsel.  You are truly fine

24         representatives of the Bar and true

25         gentlemen.  Thank you. It's been very

1                    PROCEEDINGS                    42
2       nice dealing with all of you.  Thank you
3       very kindly.
4               MR. GRAUER:  Thank you.
5               MR. WARMFLASH:  Thank you, Judge.
6               THE COURT:  Josh, are your going to
7       prepare the--
8               MR. GRAUER:  No.  Why don't we put
9       that on the record.
10              THE COURT:  Why don't we put on who
11      is doing what.
12              MR. GRAUER:  One final note.  This
13      is just to confirm that the attorneys
14      for the plaintiffs will be preparing all
15      of the settlement instruments and
16      documentation contemplated by this
17      settlement and they will forward it to
18      us, as counsel for the defendants, at
19      which time we will provide it to the
20      corporate counsel and accountants for
21      the defendants to provide their advice
22      and input and comment on the documents.
23              And upon receipt, we will endeavor
24      to expeditiously provide feedback to
25      plaintiffs' counsel and try to

PROCEEDINGS                    43

1

2    consummate any remaining issues that

3    need to be addressed without in any way,

4    shape or form modifying the terms and,

5    in fact, the financial terms, those are

6    engraved in stone.  No one will try to

7    change any of those terms.  We will

8    endeavor in good faith to sign the

9    stipulation and submit it to be so

10   ordered within approximately three weeks

11   from when we receive it from plaintiffs'

12   attorneys.

13       MR. WARMFLASH:  We will send copies

14   of the draft directly to the accountant

15   and corporate attorney.

16       MR. GRAUER:  Our firm will be acting

17   as corporate attorneys, but we were

18   going to provide it to Enid Hoffman, CPA

19   to obtain her advice and input as to the

20   allocation and structure.

21       THE COURT:  It's going to be so

22   ordered?

23       MR. GRAUER:  Yes.

24       MR. PRESENT:  Thank you again.

25       (Proceedings concluded.)

1                          PROCEEDINGS                              44

2                              * * * * *

3

4

5

6

7

8           CERTIFIED TO BE A TRUE AND CORRECT

9           TRANSCRIPT IN THIS CASE.

10

11           _____

12           JOLINDA FIORE

13           Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25