**Elizabeth Margrabe**
**31 Priory Lane**
**Pelham Manor, NY 10803-3603**

tel 914-738-1232
fax 914-738-3923
bill@margrabe.com

Michael Present, Esquire                TEL 212-577-2800        VIA CERTIFIED U.S. MAIL
Sexter & Warmflash, P.C.                FAX 212-577-2865        RETURN RECEIPT REQUESTED
115 Broadway—15th Floor                                         VIA FAX AND E-MAIL
New York, NY 10006

RE: *Margrabe et al. v. Rusciano*, Index No. 10032/2001; Supreme Court of New York, Westchester County; transmittal of Power of Attorney, preparation of settlement documents, and related issues

Dear Michael:

I, Elizabeth Anne Rusciano Margrabe, hereby appoint William Margrabe ("Bill"), residing at 31 Priory Lane, Pelham Manor, New York 10803, my attorney in fact, to act in my name, place, and stead in any way in which I, myself, could do if I were personally present, with respect to preparation and review of the settlement documents being prepared in the above-styled case, as well as any negotiations, discussions, correspondence, or other contacts between or among counsel or me about the preparation and review of said documents, or any other matter related to the settlement of the above-styled case.

Pursuant to this power of attorney, after the date of this letter, I instruct you to communicate exclusively and directly with, and deal exclusively and directly with Bill on my behalf with respect to all matters related to the settlement. Forward drafts of all settlement documents directly to him for his review, comments, and questions _before_ sending them to, showing them to, or discussing them with, opposing counsel, or to any third party. You are _not_ to propose terms in the settlement documents, _not_ already presented to the court, unless Bill approves them.

In addition, I instruct you to order, on an expedited basis, the transcript of the hearing held on June 18, 2003, at which the settlement of the above-styled case was presented to the court. I understand that expediting the transcript will cost extra. Forward a copy to Bill, as soon as possible, and wait for his comments (if any) on the transcript before forwarding any settlement documents to the attorneys for A.J. Rusciano II.

On June 18, 2003, in or near Judge Denis W. Donovan's courtroom, you and David Warmflash assured my co-plaintiff and brother, Anthony J. Rusciano III ("Tony"), my husband, Bill, and me that the terms of any financing by which Tony and I provided purchase money to A.J. Rusciano II ("A.J.") would be "commercially reasonable" and "the best security you could ever have, secured by the companies, A.J., and the court". Your assurance was greatly comforting. However, I have a number of questions about the settlement agreement, as follows. Kindly send your written answers to Bill, with a copy to me and Tony:

1.  Prior to accepting a corporate or personal guaranty of a debt obligation, it is customary in the commercial lending industry for lenders to request verifiable or certified financial statements from all borrowers and guarantors (whether persons or entities), as evidence that they _currently_ have the financial wherewithal to meet their obligations under the loan agreements —particularly to pay the debt in the event of default. This is fundamental to underwriting such a loan properly. Will you be requesting, receiving, and sharing with me such information prior to our finalizing the settlement agreement? (That way, you can make the truth of the representations in the certified financial statements, as well as the truth of the representations in future certified financial statements provided to us, a material condition of the settlement to protect us.) Financial statement should include both balance sheets and income statements prepared and audited by a CPA for each entity and A.J., himself, as well as income tax returns. To complete the snapshot I would like to see a flow-of-funds statement. If you do not plan to write such standard production of financial information into the agreement, why not?

2.  We understand that you plan to structure our loan to A.J. with each payment equal to simple interest on the unpaid balance since the previous payment, plus predetermined amortization.

3.  If A.J. tries to do _anything_ that hurts our security position, must we approve it? What protection are you providing against such an action.

4.  Why am I accepting guaranties rather than simply making _all_ of the entities on the other side of this case direct, joint, and several obligors on the promissory note?

6/19/03

Sexter & Warmflash.doc

*Elizabeth Margrabe*                    914-738-1232 tel                    914-738-3923 fax

5. Will you require presentation to us at closing of corporate or partnership resolutions authorizing each entity to enter into this settlement agreement, and to sign the necessary promissory note, as a condition of settlement, as well as a representation that each and every entity has duly authorized such a settlement, and proof of A.J.'s authority to proceed on behalf of each entity? An advantage of this is putting the directors of the entities (A.J.'s family members) at risk for any financial damages that result from actions that they approve.

6. Will the escrow agreement/voting trust depend on A.J.'s performance of his obligation to pay us over time?

7. How will you define "default" under the agreement? If A.J. pays late, or not at all, how and when will he be penalized? Will you provide for acceleration of the entire debt if he defaults? Will you provide that failure to provide us with the financial statements required on a timely basis also is a default? Will you provide that any materially false or misleading representation, warranty, statement, or report A.J. or the entities make to us in the financial statements, or elsewhere, is a default? Will you also provide that any suspension, liquidation, sale, transfer, mortgage or pledge of any assets of the businesses prior to paying us out in full without our written consent is a default? Also, please, provide that the following is a default: if any of the entities are, or become, insolvent prior to our being paid in full, or a receiver is appointed, or a bankruptcy petition is filed, or an assignment for the benefit of creditors occurs, or a major lender to any of the entities declares any obligation in default, or action is taken against the entities under any insolvency law? Will you provide that if any creditor tries to take possession of any property of the entities for non-payment of any obligation, then that is a default? Will you provide that issuance of any tax levy or lien against the entities, or any entities' failure to pay any tax obligation when assessed or due and owing, is a default? Will you provide that the filing of any state or federal charges against any of the entities or their assets in which forfeiture is a possible penalty is a default? (The same definitions should apply to all guarantors.)

8. What are our rights upon default? Will any default in payment terminate A.J.'s rights under the escrow/voting trust agreement immediately?

9. After a default or other event that reasonably leads us to believe that our payments are in jeopardy, would we have the right to inspect the books and records of the entities? Would we have the right to take steps to protect our interests as creditors, before the next payment due date?

10. Will you require insurance on A.J.'s life for the duration of the installment payments with us as the named beneficiaries in an amount sufficient to pay us off if he dies?

11. If A.J. retires, becomes ill or incapacitated, relinquishes control, abandons the business, sells, transfers, mortgages, or pledges all or a major part of the assets of the businesses to another entity not an obligor on the note, or cashes out and leaves the business without paying Tony and me, any of these before paying us in full, what are our rights, and how do you propose to protect us? Shouldn't A.J. be required to pay us in full at the time of any such material event, or be required to have the entity acquiring the asset also assume the obligation? Otherwise, I could be left with obligations owed by empty shells without assets, and with no way to pay us. If A.J. sells or mortgages the assets, pays himself a huge "bonus", moves to Florida, buys himself a multi-million dollar homestead with the cash proceeds of the sale or loan, and bankrupts on us without paying us, how am I protected?

Thank you for your time and attention to this matter. I look forward to your prompt reply.

I have hereunto signed my name this 20th day of June, 2003.

                                                                               *Elizabeth Buscean Margrabe*
                                                                               Elizabeth Margrabe

STATE OF NEW YORK
COUNTY OF WESTCHESTER: ss
Sworn to and subscribed before me this 20 day of June, 2003.

                            CYNTHIA MOLINA
                            No. 01MO6049362
                            Notary Public, State of New York
                            Qualified in Westchester County
My commission expires:   Commission Expires 10/10/2002  2006          Notary Public

Cc: William Margrabe

*Sexter & Warmflash.doc*                                         2                                               6/19/03