At an IAS Part of the Supreme Court of the State of New York, County of Westchester, held, at the Courthouse thereof, located at 111 Dr. Martin Luther King Jr. Boulevard, White Plains, New York, on the 20th day of May, 2004.

P R E S E N T:

    HON: W. DENIS DONOVAN,

                    Justice.

-------------------------------------------------X

ELIZABETH MARGRABE AND ANTHONY J. RUSCIANO, : Index No.
III, AS SHAREHOLDERS OF RUSCIANO & SON CORP.,   10032/2001
SECOR LANE CORP. AND VINRUS CORP., SUING IN   :
THE RIGHT OF RUSCIANO & SON CORP., SECOR
LANE CORP. AND SUBSIDIARIES, AND VINRUS        :
CORP., ELIZABETH MARGRABE AND ANTHONY
RUSCIANO, III, INDIVIDUALLY,                   : ORDER TO
                                                  SHOW CAUSE
                  Plaintiffs,          :

       -against-                          :     NO ORAL
                                                  ARGUMENT
ANTHONY J. RUSCIANO, II, RUSCIANO & SON        :
CORP., VINRUS CORP., SECOR LANE CORP. AND
SUBSIDIARIES, PVE COMPANY JOINT VENTURE,       :
PVE II CO., AND TONGENE REALTY COMPANY,
AND RUSCIANO ASSOCIATES, INC.                  :

                  Defendants.          :

-------------------------------------------------X

        Upon the annexed Affidavit of Michael Present, Esq., sworn to on May 14, 2004; with exhibits annexed thereto, and upon all prior papers and proceedings heretofore had herein in respect to the above-captioned action, including the stipulation of the parties entered in open court on June 18, 2003; the Order and Judgment of the Court dated March 22, 2004 (the "Judgment"); and

the Stipulation and Order by and among Elizabeth Margrabe, Anthony J. Rusciano, III and Sexter & Warmflash, P.C. ("S&W") dated April 29, 2004, and due deliberation having been had upon the matters set forth in said Affidavit, LET PLAINTIFF

Elizabeth Margrabe ("Margrabe") show cause before this Court, at an IAS Part (Room 1606) thereof, located at 111 Dr. Martin Luther King Boulevard, White Plains, New York, on the 25th day of June, 2004, or as soon thereafter as counsel can be heard, why an Order should not be granted pursuant to Judiciary Law § 475 and the above-referenced Orders, (i) fixing S&W's lien upon the settlement proceeds recovered by Margrabe in the above-captioned action, (ii) directing the law firm of Collier Halpern, Newberg, Noletti & Bock, LLP ("CHNNB") as escrow agent, to pay over to S&W the sum of $121,659.74, plus accrued interest, which sum was deposited in escrow by Margrabe, as security for S&W's within legal fee claims and (iii) awarding S&W interest and costs, including legal fees incurred in connection with the instant application; and it is further,

ORDERED that service of a copy of this Order to Show Cause and supporting papers upon Harry D. Lewis, Esq., the attorney of record for plaintiff Elizabeth Margrabe, on or before May 24, 2004 __, be deemed good and sufficient service; and it is further

2

ORDERED that answering papers shall be personally served upon Sexter & Warmflash, P.C., attorneys for plaintiffs, at 115 Broadway, New York, New York 10006, so as to be received no later than June 16, 2004, and it is further ORDERED, that reply papers are due in hand to Court and counsel by June 24, 2004.

ENTER,

/s/ H. Denis Donovan
J.S.C.

Proof of Service Must Be Submitted to Room 1806 on or before the Return date.

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------X

ELIZABETH MARGRABE AND ANTHONY J. RUSCIANO,          :   Index No.
III, AS SHAREHOLDERS OF RUSCIANO & SON CORP.,            10032/2001
SECOR LANE CORP. AND VINRUS CORP., SUING IN          :
THE RIGHT OF RUSCIANO & SON CORP., SECOR
LANE CORP. AND SUBSIDIARIES, AND VINRUS              :
CORP., ELIZABETH MARGRABE AND ANTHONY
RUSCIANO, III, INDIVIDUALLY,                         :   AFFIDAVIT

                        Plaintiffs,                  :

        -against-                                    :

ANTHONY J. RUSCIANO, II, RUSCIANO & SON              :
CORP., VINRUS CORP., SECOR LANE CORP. AND
SUBSIDIARIES, PVE COMPANY JOINT VENTURE,             :
PVE II CO., AND TONGENE REALTY COMPANY,
AND RUSCIANO ASSOCIATES, INC.                        :

                        Defendants.                  :

------------------------------------------------X

STATE OF NEW YORK   )
                    : ss.:
COUNTY OF NEW YORK  )

    MICHAEL PRESENT, being duly sworn, deposes and says:

    1.   I am a member of the law firm of Sexter & Warmflash, P.C. ("S&W"), attorneys for Plaintiff Anthony J. Rusciano, III ("Mr. Rusciano") and formerly attorneys for Plaintiff Elizabeth Margrabe ("Ms. Margrabe"). Unless otherwise indicated, this Affidavit is based on personal knowledge.

    2.   I make this affidavit in support of S&W's motion for an order (a) pursuant to Judiciary Law § 475 and the Court's May 10, 2004 Order and Stipulation (the "Fee Dispute Stipulation";

Exhibit A hereto) for an attorney charging lien in the amount of $121,659.74, plus interest, on the settlement proceeds recovered by Ms. Margrabe in the above-captioned action; (b) directing the law firm of Collier Halpern, Newberg, Noletti & Bock, LLP ("CHNNB"), as escrow agent, to pay to S&W the sum of $121,659.74[1], plus accrued interest, which sum was deposited in escrow by Ms. Margrabe, as security for S&W's within legal fee claims; and (c) awarding S&W all interest, costs and expenses including legal fees that it has incurred in connection with the instant application.

3. S&W vigorously prosecuted the above action and obtained a multi-million dollar settlement for Plaintiffs. On the record in open Court, Ms. Margrabe expressed her happiness with the settlement and with S&W's representation. However, when it came time to for her pay S&W $161,000 in legal fees out of the settlement proceeds, Ms. Margrabe suddenly discovered problems with S&W and decided not to pay. As shown below, Ms. Margrabe, who shall be paid in excess of $4,300,000 under the settlement agreement, has no legitimate basis for refusing to pay S&W. The real reason for her refusal to pay is that her husband, non-party William Margrabe, intensely dislikes S&W partner David Warmflash and he has concocted this "fee dispute" as a form of punishment.

---

[1] The motion is not brought against Ms. Margrabe's co-plaintiff Mr. Rusciano, because Mr. Rusciano has fully paid S&W for all of his legal fees that were owed under the retainer agreement with S&W.

2

BACKGROUND

4. In April, 2001, Ms. Margrabe and her brother Mr. Rusciano (collectively, "Plaintiffs") retained S&W to commence and prosecute the above-captioned complex commercial litigation (the "Action") concerning their ownership interests in the Defendant corporations and partnerships. S&W thereafter engaged in extensive discovery, motion practice and extensive trial preparation.

5. The extensive efforts undertaken by S&W paid off. On June 18, 2004, as trial was about to begin, Defendants agreed to pay Plaintiffs **$8,375,000**, plus interest, plus a proportionate share of certain tax certiorari refunds (the "Total Settlement Amount"). The terms of the settlement agreement were read into the record in open court on June 18, 2003. At that time, a voir dire of the parties was conducted by counsel and by Justice W. Denis Donovan, who provided considerable assistance in fashioning a settlement acceptable to all parties. During voir dire by Justice Donovan, Ms. Margrabe stated, on the record, the following concerning the representation provided to her by S&W:

> THE COURT: Mrs. Margrabe, do you feel that your attorneys, Mr. Warmflash and Mr. Present have done everything they possibly could in representing your interests?
>
> MS. MARGRABE: Yes.
>
> THE COURT: You're very pleased with everything they've done on your behalf?

3

>MS. MARGRABE: Yes I am.
>
>THE COURT: Do you realize this is for all time. You can't come back and say this wasn't fair and equitable. Do you understand that?
>
>MS. MARGRABE: I do.
>
>THE COURT: Do you feel that under all the attendant circumstances that the agreement was fair and equitable?
>
>MS. MARGRABE: Yes.

Transcript (Exhibit "B") page 38, lines 19-25 and page 39, lines 1-13

    6.    The settlement closing was delayed by a series of disagreements concerning various aspects of the formal Order and Stipulation of Settlement that was to be executed by the parties. These disagreements were resolved by the Court in its March 22, 2004 Order and Judgment.

    7.    The closing was thereafter scheduled for May 10, 2004. On or about April 9, 2004, Ms. Margrabe, who was about to become a multimillionaire due to the efforts of S&W, suddenly "discovered" problems with S&W's fees and terminated the firm. Page one (1) of her letter is annexed as Exhibit "C". Ms. Margrabe's alleged "problems" with S&W's fees came as a surprise. For approximately three years, S&W had been sending Ms. Margrabe and Mr Rusciano detailed monthly invoices showing the accrual of S&W's outstanding legal fees. Examples of S&W's itemized invoices are annexed hereto as Exhibit "D". Ms. Margrabe never expressed

4

any problem with or objection to any of our invoices until her April 9, 2004 letter.

8. In order to avoid further delay in the settlement of the Action, S&W and Ms. Margrabe agreed that they would resolve her fee "dispute" by way of a post-settlement motion to this Court. In the interim, the disputed fees would be held in escrow with CHNNB. A copy of the Escrow Agreement with CHNNB is annexed hereto as Exhibit "E".

9. The formal closing took place on May 10, 2004. At the closing, Mr. Rusciano paid S&W the full amount of his obligation ($161,393.74) out of his settlement proceeds. However, Ms. Margrabe, who also owed S&W $161,393.74, only paid S&W the sum of $39,734.00 "under protest". She deposited the remaining $121,659.74 in escrow with CHNNB.

## S&W IS ENTITLED TO ITS FEES UNDER THE RETAINER AGREEMENT

10. The basis for Ms. Margrabe's "objections" to our legal fees is her belated discovery of purported problems with the retainer agreement that she entered into with S&W. This is just pretext. When they retained us in April 2001, both Ms. Margrabe and Mr. Rusciano executed substantially similar retainer agreements with S&W. Copies are annexed hereto as Exhibits "F" and "G".

5

11. Shortly before S&W started the Action on their behalf, Plaintiffs advised S&W that they could not pay S&W legal fees on a current basis. At Plaintiffs' request and solely as an accommodation to them, S&W agreed to modify the retainer agreement and Plaintiffs were given the option of either (a) paying S&W's fees on a current monthly basis at S&W's normal billable hourly rates, or (b) paying fees at a rate calculated at fifty percent (50%) above the normal billable hourly rates, in which case Plaintiffs would be billed monthly but would only have to pay half of each invoice amount on a current basis with the balance payable when the Action concluded.

12. Plaintiffs choose the latter option and thereby deferred payment of most of the fees owed S&W until the conclusion of the Action. Unfortunately, Plaintiffs could not even live up to their obligations under the modified retainer agreement. In September 2003, Plaintiffs claimed they stopped making any payments to S&W because they had supposedly run out of money.

13. Based on Plaintiffs' failure to make any payments, S&W could have resigned. However, we did not do so because of our concerns that such a resignation would jeopardize the settlement and our clients' recovery thereunder. In fact, at that time, Plaintiffs acknowledged that they were not paying us but repeatedly asked us to continue representing them.

14. I must point out that even though it provided for higher hourly rates, the revised retainer agreement was still advantageous to Plaintiffs. First, S&W's hourly rates - even with upward modification - were less than the hourly rates routinely charged by many other law firms. Second, Plaintiffs' legal fees under the revised retainer agreement were far less than they would under a standard contingency fee agreement. Under the revised retainer agreement, the total amount of legal fees charged by S&W was less than five percent (5%) of the nearly $9,000,000 settlement that we obtained for Plaintiffs. Under a standard contingency fee arrangement, the amount of legal fees could easily have exceeded those due under the revised retainer agreement by well over <u>one million dollars</u>.

15. I must also point out that Ms. Margrabe fully negotiated, understood, agreed to and never (until it was finally time to pay) had any problems with the revised retainer agreement for our services. For example, attached and referred to in the revised retainer agreement, is an extensive e-mail message drafted by Ms. Margrabe's husband, William Margrabe, Ph.D. (a former Wharton Business School professor) in which he fully analyzed the terms of the revised retainer agreement for his wife. A copy of this message is annexed hereto as Exhibit "H".

7

16. In an April 2001, Ms. Margrabe wrote a letter (Exhibit "I" hereto), professing her appreciation to my partner, Mr. Warmflash saying:

> Thanks again David for all of your help and understanding. If we hadn't found you, I can't imagine where we would be right now. I very much appreciate it.

17. Finally, Ms. Margrabe accepted our monthly invoices without objection for nearly three years. Only in April 2004, when the settlement closing was imminent, did Ms. Margrabe suddenly discover "problems" with the revised retainer agreement and several years' worth of invoices.

18. I believe that Ms. Margrabe's April 2001 letter and her June 2003 on-the-record expressions of happiness with the settlement and our representation reflect her true feelings. Indeed, Ms. Margrabe had every reason to be happy because S&W had obtained a very advantageous settlement under which Plaintiffs will be paid approximately **nine million dollars**.

19. I also believe that the "fee dispute" has been instigated by Ms. Margrabe's husband to "punish" us because of personality clashes that began in late 2003 in connection with the parties' disputes over the form of the final stipulation and order of settlement. During this period, Dr. Margrabe sent increasingly hostile, unprofessional, insulting, baseless communications

8

culminating in his outrageous and incredibly defamatory April 9, 2004 letter (co-signed by Ms. Margrabe) discharging us.

20. The stated grounds for the "discharge" are clearly pretextual. For example, in the letter Dr. Margrabe goes on and on about a potential conflict of interest between Ms. Margrabe and Mr. Rusciano, her brother and co-plaintiff. Of course, Ms. Margrabe (and her husband) have always known of the existence of this potential conflict of interest. In fact, the potential conflict is specifically referenced in the very first paragraph of Ms. Margrabe's Retainer Agreement with S&W. In any event, this potential conflict has become moot because Ms. Margrabe, with the advice of her new counsel, Philip Halpern, executed the Order and Stipulation of Settlement (procured by S&W) under which she will become a multimillionaire.

### S&W IS ALSO ENTITLED TO IT'S FEES IN QUANTUM MERUIT

21. Finally, Dr. Margrabe and <u>his wife's</u> new attorney, Harry Lewis, have recently started making the nonsensical assertion that the revised retainer agreement was somehow a "usurious loan agreement". This assertion is both slanderous and absurd. S&W never loaned any monies to Ms. Margrabe. In any event, since Ms. Margrabe breached the revised retainer agreement by failing to make any payments for many months, we would gladly accept a determination by the Court of our entitlement to legal fees based

on <u>quantum</u> <u>meruit</u> taking into account that because of our efforts, Ms. Margrabe will be collecting approximately $4,500,000. We respectfully suggest that under the circumstances, an award of fees of ten percent (10%) of Ms. Margrabe's recovery, which is two-thirds less than a traditional 33% contingency fee arrangement, would be more than fair. In such event we would be entitled to the fees from Ms. Margrabe alone in the amount of $450,000, less all prior payments made by her.

WHEREFORE, Sexter & Warmflash, P.C. requests an Order (i) fixing S&W's lien pursuant to Judiciary Law § 475 upon the settlement proceeds recovered by plaintiff Elizabeth Margrabe ("Margrabe") in the above-captioned action and (ii) directing the law firm of Collier Halpern, Newberg, Noletti & Bock, LLP, ("CHNNB") as escrow agent, to pay over to S&W, the sum of $121,659.74, plus accrued interest, which sum was deposited by Margrabe in escrow, as security for S&W's within legal fee claims and for such other and further relief as to the Court seems just and proper.

_____
Michael Present

Sworn to before me this
14th day of May, 2004

_____
Notary Public

ROSANNA MISTICONI
Notary Public, State of New York
No 02MI6042750
Qualified in Nassau County
Commission Expires June 5, 20__

10