Westlaw.

38 A.D.3d 163                                                                                           Page 1
38 A.D.3d 163, 828 N.Y.S.2d 315, 2007 N.Y. Slip Op. 00065
**(Cite as: 38 A.D.3d 163)**

►Sexter & Warmflash, P.C. v. Margrabe
N.Y.A.D. 1 Dept.,2007.

Supreme Court, Appellate Division, First Department, New York.
**SEXTER & WARMFLASH**, P.C., et al., Plaintiffs-Respondents,
v.
William **MARGRABE**, et al., Defendants-Appellants.
Jan. 4, 2007.

**Background:** Law firm and attorneys sued client and her husband for defamation based on statements they made in letter discharging firm as client's attorneys. The Supreme Court, New York County, Shirley Werner Kornreich, J., denied defendants' motion to dismiss complaint, and granted in part plaintiffs' cross motion for partial summary judgment as to liability based on usury accusation, and denied defendants' motion for renewal. Defendants appealed.

**Holding:** The Supreme Court, Appellate Division, Friedman, J., held that allegedly defamatory statements in letter were protected by absolute privilege for statements made in the course of, and relating to, judicial proceedings.

Reversed.
West Headnotes
**[1] Libel and Slander 237 €—38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
            237k38 Judicial Proceedings
                237k38(1) k. In General. Most Cited Cases
Allegedly defamatory statements in letter written by client's husband and acknowledged and signed by client, concerning quality of law firm's representation of client and her brother in lawsuit arising from family business dispute and in the negotiations to settle it, and the propriety of firm's fee arrangement for that representation, were protected by the absolute privilege for statements made in the course of, and relating to, judicial proceedings, where statements were directed solely to parties legitimately involved in proceeding and two outside attorneys client had retained for independent advice concerning settlement of lawsuit.

**[2] Libel and Slander 237 €—36**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
            237k36 k. In General. Most Cited Cases
An absolute privilege affords a speaker or writer immunity from liability for an otherwise defamatory statement to which the privilege applies, regardless of the motive with which the statement was made.

**[3] Libel and Slander 237 €—36**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
            237k36 k. In General. Most Cited Cases
The protection of an absolute privilege, unlike a qualified privilege, is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor. Restatement (Second) of Torts § 243.

**[4] Libel and Slander 237 €—38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
            237k38 Judicial Proceedings
                237k38(1) k. In General. Most Cited Cases
Judicial proceedings are among the settings in which an absolute privilege is recognized; the rule is that an allegedly defamatory statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation.

**[5] Libel and Slander 237 €—38(1)**

237 Libel and Slander

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
              237k38(1) k. In General. Most Cited Cases

The absolute privilege for allegedly defamatory statements made in the course of judicial proceedings extends to judge, jurors, counsel, witnesses, and the parties to the proceeding.

**[6] Libel and Slander 237 ☞38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
              237k38(1) k. In General. Most Cited Cases

While the judicial proceedings privilege generally would not protect a person, other than a judge, juror or witness, who was neither a litigating party nor an attorney for one of the parties, client's husband, in his capacity as her duly appointed agent for purposes of pending lawsuit, was privileged to speak about that lawsuit to the same extent client was. Restatement (Second) of Torts § 890; Restatement (Second) of Agency § 345.

**[7] Libel and Slander 237 ☞36**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k36 k. In General. Most Cited Cases

All communications between law firm's client and her husband themselves, on any subject, were absolutely privileged, with respect to law firm's claim of defamation, based on their status as a married couple. Restatement (Second) of Torts § 592.

**[8] Libel and Slander 237 ☞38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
              237k38(1) k. In General. Most Cited Cases

In view of the public policy to permit persons involved in a judicial proceeding to write and speak about it freely among themselves, allegedly defamatory statements made in the course of such proceedings are afforded the protection of privilege, irrespective of the motive with which the statements are made; stated otherwise, the judicial proceedings privilege is extended to pertinent statements made in the course of litigation no matter how great the personal malice of the writer.

**[9] Libel and Slander 237 ☞38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
              237k38(1) k. In General. Most Cited Cases

In the case of a defamatory statement that was obviously impertinent to the judicial proceeding in which it was made, the absolute privilege for judicial proceedings is withdrawn because the malice of the speaker or writer is inferred from the statement's impertinence; however, an offending statement pertinent to the proceeding in which it was made is absolutely privileged, regardless of any malice, bad faith, recklessness or lack of due care with which it was spoken or written, and regardless of its truth or falsity.

**[10] Libel and Slander 237 ☞38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
              237k38(1) k. In General. Most Cited Cases

Whether a statement is at all pertinent to the litigation is determined by an "extremely liberal" test; a statement made in the course of judicial proceedings is privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation.

**[11] Libel and Slander 237 ☞38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Therein
    237k35 Absolute Privilege
        237k38 Judicial Proceedings
           237k38(1) k. In General. Most Cited Cases
The narrow and technical rules normally applied to determine the admissibility of evidence are not used to determine an allegedly defamatory statement's pertinence for purposes of the judicial proceedings privilege analysis.

**[12] Libel and Slander 237 &#128;50.5**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k50.5 k. Exceeding Privilege or Right. Most Cited Cases
To be actionable, a statement made in the course of judicial proceedings must be so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame; the possibly pertinent for purposes of the judicial proceedings privilege need be neither relevant nor material to the threshold degree required in other areas of the law, and the barest rationality, divorced from any palpable or pragmatic degree of probability, suffices to establish the offending statement's pertinence to the litigation.

**[13] Libel and Slander 237 &#128;123(8)**

237 Libel and Slander
    237IV Actions
        237IV(E) Trial, Judgment, and Review
           237k123 Questions for Jury
                237k123(8) k. Privilege. Most Cited Cases
The pertinence of an allegedly defamatory statement made in the course of judicial proceedings, for purposes of the judicial proceedings privilege, is a question of law for the court and, in answering that question, any doubts are to be resolved in favor of pertinence.

**[14] Pretrial Procedure 307A &#128;648**

307A Pretrial Procedure
    307AIII Dismissal
        307AIII(B) Involuntary Dismissal
           307AIII(B)5 Particular Actions or Subject Matter, Defects in Pleading
                307Ak648 k. Libel and Slander. Most Cited Cases
Pertinence of an allegedly defamatory statement made in the course of judicial proceedings, for purposes of the judicial proceedings privilege, is properly determinable on a motion to dismiss addressed to the pleadings and documentary evidence alone.

**[15] Libel and Slander 237 &#128;38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
                237k38(1) k. In General. Most Cited Cases
The absolute judicial proceedings privilege is not limited to statements made on the record during oral testimony or argument, or set forth in formal litigation documents, such as pleadings, affidavits, and briefs; in the interest of encouraging parties to litigation to communicate freely in the course of judicial proceedings, the privilege is extended to all pertinent communications among the parties, counsel, witnesses, and the court.

**[16] Libel and Slander 237 &#128;38(1)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
                237k38(1) k. In General. Most Cited Cases
Whether a statement was made in or out of court, was on or off the record, or was made orally or in writing, the rule is the same; the statement, if pertinent to the litigation, is absolutely privileged.

**[17] Libel and Slander 237 &#128;50.5**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k50.5 k. Exceeding Privilege or Right. Most Cited Cases
Limitations of scope of outside attorney's representation of client, with regard to settlement of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lawsuit in which law firm was representing client, could not, as a matter of law, defeat application of judicial proceedings privilege to letter written by client's husband and acknowledged and signed by client, concerning quality of law firm's representation and propriety of firm's fee arrangement, on grounds that client and husband sent letter to attorney purely out of malice; notwithstanding any warning attorney gave client that he would not represent her against law firm, he was advising client on settlement of action, which was precisely the subject of letter.

[18] Libel and Slander 237 ⚖️38(1)

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k35 Absolute Privilege
           237k38 Judicial Proceedings
                237k38(1) k. In General. Most Cited Cases
The measure of pertinence of an allegedly defamatory statement made in the course of judicial proceedings, for purposes of the judicial proceedings privilege, is what a reasonable layperson, rather than a lawyer, might think has sufficient appearance of connection to the case to be relevant.

**317 Greenberg & Massarelli, LLP, Purchase (William Greenberg and Crystal Massarelli of counsel), for appellants.
Sexter & Warmflash, P.C., New York (Edward R. Finkelstein of counsel), for respondents.

RICHARD T. ANDRIAS, J.P., DAVID FRIEDMAN, GEORGE D. MARLOW, JAMES M. CATTERSON, BERNARD J. MALONE, JR., JJ.
FRIEDMAN, J.
*164 In this defamation action, plaintiff attorneys are suing a former client and her husband based on statements they made in the letter discharging plaintiffs as the wife's attorneys. The letter's allegedly defamatory statements criticized the quality of plaintiffs' representation of the wife in a lawsuit concerning a family business dispute, and asserted that plaintiffs were charging usurious interest on their fees. The letter stated that it was being copied to the wife's brother, whom plaintiffs were representing in the same matter, and two other attorneys defendants had retained for independent advice in that litigation. There is no indication that the letter was published to any other third parties. On **318 these undisputed facts, we hold that the allegedly defamatory statements in the subject letter enjoy the protection of the absolute privilege for statements made in the course of, and relating to, judicial proceedings. Accordingly, we reverse and grant defendants' motion to dismiss the complaint.

Plaintiffs are Sexter & Warmflash, P.C. (S & W), a professional corporation engaged in the practice of law, and two of its attorneys, David Warmflash and Michael Present, Esqs. In April 2001, defendant Elizabeth Margrabe and her brother, Anthony J. Rusciano III (known as "Tony"), retained S & W to prosecute on their behalf an action against their cousin, Anthony J. Rusciano II (known as "A.J."), and the family-owned business entities that he controlled. Ms. Margrabe and Tony Rusciano held minority interests in the family businesses. As recited in S & W's retention letter, dated April 10, 2001, Ms. Margrabe and her brother contemplated litigation in the hope of "extricat[ing] [themselves] from the businesses," i.e., inducing their cousin to buy out their interests. The retention letter noted that S & W had advised Ms. Margrabe and her brother that*165 "there may be a potential conflict of interest between the two of you relating to the value of each of your interests-and you have advised us that, irrespective of the agreements relating to these business entities, any and all benefits to be derived shall be shared between you equally."

With regard to fees, the April 2001 retention letter provided that S & W would bill Ms. Margrabe and Tony Rusciano, collectively, on a monthly basis, for 50% of S & W's fees as calculated in accordance with the firm's "regular and customary billing rates for similar services." The letter further provided that, when the litigation ended, the clients would pay "an additional amount equal to one hundred percent (100%) of our total legal fees accrued during the course of our representation," based on the same billing rates. "Accordingly," the letter explained, "upon conclusion of this litigation-whether by settlement or following trial-the total legal fees to which [S & W] shall be entitled shall equal one and one-half times the actual legal fees accrued." The retention letter stated that the purpose of this fee arrangement was "to reduce [the clients'] financial burden during the course of this litigation" and "to fairly compensate [S & W] upon conclusion of the litigation for [its] financial accommodations."

In June 2001, S & W, on behalf of Ms. Margrabe and

Tony Rusciano, commenced an action in Supreme Court, Westchester County, against A.J. Rusciano and certain of the family business entities (the Westchester County action). Warmflash and Present were the S & W attorneys who handled the case for Ms. Margrabe and her brother. On June 18, 2003, as the matter was about to go to trial, A.J. Rusciano agreed to settle the case, and to purchase Ms. Margrabe's and Tony Rusciano's interests in the businesses, for $8,375,000 and a share of the proceeds of a tax certiorari proceeding. Ms. Margrabe and Tony Rusciano were to receive an initial payment of $1.25 million within 30 days of the closing, with the remainder of the consideration to be paid in installments over six and a half years. The terms of the settlement were immediately placed on the record in open court. Upon questioning by the court, Ms. Margrabe expressed satisfaction with the terms of the settlement and with her representation by S & W.

Within days after the announcement of the settlement, Ms. Margrabe executed a power of attorney appointing her husband, defendant William Margrabe, to serve as **319 her attorney-in-fact for *166 purposes of approving the formal closing documents to be used to consummate the settlement.[FN1] Although the negotiations concerning the form of the settlement's final documentation went on for months, Dr. Margrabe (who holds a doctorate in economics) felt that S & W was too willing to accommodate the other side in the interest of closing the deal. It was Dr. Margrabe's perception that, in dealing with opposing counsel, S & W was giving the interest of Tony Rusciano (who was having financial difficulties) in consummating the deal as soon as possible (and the firm's own interest in collecting the balance of its fee) priority over Ms. Margrabe's interest in having the settlement documents provide security arrangements to ensure that all agreed-upon future payments would be made when due.

> FN1. Although the record indicates that Ms. Margrabe revoked her husband's June 2003 power of attorney in November of that year, she executed a new power of attorney reappointing him in February 2004. The letter containing the statements for which the Margrabes are being sued states that Dr. Margrabe issued that letter on his wife's behalf pursuant to the February 2004 power of attorney.

Notwithstanding Dr. Margrabe's dissatisfaction with S & W, Ms. Margrabe continued to employ the firm for about ten months after the initial announcement of the settlement in June 2003. Ms. Margrabe did, however, retain two other attorneys to advise her independently regarding certain aspects of the finalization of the settlement. One of these attorneys was Harry D. Lewis, Esq., a bankruptcy practitioner and personal friend of Dr. Margrabe, who agreed to render advice concerning the adequacy of the provisions to secure the future payments called for by the settlement. In his November 2003 retainer agreement with the Margrabes, Lewis (who apparently first became involved in June 2003) disclaimed any expertise "in state court litigation, or in structuring or closing settlements in state court," for which purpose "he advise[d] use of other counsel." The other attorney Ms. Margrabe hired was Philip Halpern, Esq., who, in a retainer letter dated July 2, 2003, stated that he would limit his services "to only a full and complete explanation of the settlement documents created by [S & W] as well as making suggestions for improvements thereon." At some point, Halpern told the Margrabes that, because he had worked for David Warmflash early in his career, he could not represent Ms. Margrabe in any fee dispute with S & W.

Because the parties to the Westchester County action were unable to agree on the final documentation of their settlement, *167 the matter was ultimately submitted to the court for decision. By decision and order entered March 29, 2004, the court approved the version of the settlement agreement submitted by A.J. Rusciano's counsel. The order directed the parties and their counsel to execute that agreement and "present the executed agreement to the court for signature."

Over the week and a half following entry of the court's March 29 order, Dr. Margrabe and S & W exchanged a series of increasingly hostile e-mails. Dr. Margrabe, speaking as his wife's attorney-in-fact, expressed the desire to continue litigating the terms of settlement, and stated that his wife would not participate in a closing until the Margrabes received further advice from Halpern, their independent counsel. S & W, on the other hand, regarded the March 29 order as the end of the matter, and insisted on going forward with the closing that the firm had scheduled with opposing counsel for April 15. The final e-mail to Dr. Margrabe from Warmflash of S & W, dated April 9, 2004, **320 tersely stated: "Bill you will not prevent the closing.... I will show up

with [T]ony [Rusciano] and we will close."

The same day, Dr. Margrabe sent Warmflash and Present of S & W a 12-page, single-spaced letter (the April 9 letter). The letter was written and signed by Dr. Margrabe in his capacity as his wife's attorney-in-fact, and, beneath Dr. Margrabe's signature, also bore Ms. Margrabe's signature after the notation "I have read and approved this letter." [FN2] The letter terminated S & W's representation of Ms. Margrabe, purportedly "with cause," and objected to S & W's continued representation of Tony Rusciano. The bulk of the April 9 letter comprises a long list of complaints about the alleged deficiencies of S & W's representation*168 of Ms. Margrabe and her brother in the Westchester County action and in the negotiations to settle that action.[FN3] The "cc" notation at the end of the letter indicates that it was copied to Halpern, Lewis, and Tony Rusciano.

> FN2. The apparent suggestion in S & W's appellate brief that Dr. Margrabe did not sign the April 9 letter as his wife's agent is without merit. Although there is no indication of Dr. Margrabe's representative capacity directly adjacent to his signature on the final page of the letter, the opening paragraph reads as follows:
> "On behalf of my wife, Elizabeth Anne Rusciano Margrabe ('Betty'), using the power of attorney that she signed on February 13, 2004, I hereby terminate the employment of the law firm of [S & W], with cause, in the above-styled litigation and related negotiations. Further, on behalf of Betty, I object to [S & W's] continued representation of her co-plaintiff and brother, Anthony J. Rusciano III ('Tony'). The rest of this letter discusses (I) the cause for your termination, (II) why you cannot continue to represent Tony, and (III) Betty's final instructions for you."
> We reject S & W's unsupported suggestion that Ms. Margrabe's placement of her own signature on the letter is, standing alone, inconsistent with her husband's having issued it as her agent.

> FN3. The Margrabes state that the April 9 letter spells out in detail the basis of their dissatisfaction with S & W's services in order to establish "cause" for discharging the firm, which they anticipated would become an issue in any future litigation concerning S & W's entitlement to the balance of its fee.

In May 2004, S & W, Warmflash, and Present (collectively, S & W) commenced this action against the Margrabes. The verified complaint asserts a single cause of action, for defamation, based on the following statements made in the Margrabes' April 9 letter:

"[Y]our proposed drafts were replete with errors, both major errors costly to our interests, and typographical errors embarrassing to putatively 'literate' persons."

"[Y]ou have been far more adept at thwarting the participation of those lawyers we have engaged to assist you than at following the transparent machinations of opposing counsel."

"From its inception, your firm's representation of Mrs. Margrabe, and her brother, co-plaintiff Tony Rusciano ('Tony') has been fraught with missteps, poor legal judgments, failure to protect your clients' rights on repeated occasions, and poor, adversarial, or misleading communications with your clients...."

"[Y]ou contracted to charge your own clients interest in excess of that permitted by New York law on loans related to your fees."

"From about July 2, 2003 through about November 28, 2003, you manipulated the trust and confidence that Plaintiffs Tony Rusciano and Elizabeth Margrabe jointly placed in you."

**321 "Repeatedly, you extracted negotiating concessions from Elizabeth, adverse to her interests by reducing the security on her loans of millions of dollars to her thieving and untrustworthy cousin, in order to obtain a chance at quicker cash for the financially desperate Tony."

*169 "Some of the concessions you offered your adversaries ensured earlier payment of your fees while consigning one of your clients to likely insolvency."

"You have a record of manipulating your clients to further your own interests...."

The verified complaint alleges that the Margrabes published the April 9 letter to Halpern, Lewis, and Tony Rusciano, the third-party recipients indicated in the letter itself. It is also alleged that the statements quoted above are false and defamatory, and "were motivated by actual malice, in that [d]efendants knew that the matters contained therein so published were false and untrue; or were published with reckless and wanton disregard of whether they were false and

untrue." Plaintiffs seek damages of not less than $1 million.

In lieu of answering, the Margrabes moved to dismiss the complaint pursuant to CPLR 3211(a)(1) and (7), among other relief. In support of the motion to dismiss, the Margrabes contended that the contents of their April 9 letter were client confidences or secrets within the meaning of Code of Professional Responsibility DR 4-101(a) (22 NYCRR 1200.19[a] ). Therefore, the Margrabes argued, the action was barred as a violation of S & W's professional obligation to refrain from revealing Ms. Margrabe's confidences or secrets, and from using those confidences or secrets to Ms. Margrabe's disadvantage or to S & W's advantage, without Ms. Margrabe's consent (seeDR 4-101[b] [22 NYCRR 1200.9(b) ] ). The Margrabes also argued that their publication of the April 9 letter to Lewis, Halpern, and Tony Rusciano was protected by the qualified privilege extended to communications between persons sharing a common interest (see Foster v. Churchill, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 [1996] ). While the Margrabes acknowledged that malice could defeat the common interest privilege, they maintained that the complaint failed to allege sufficient facts from which malice could be inferred so as to defeat the privilege. Finally, the Margrabes argued that the transmission of the April 9 letter to Lewis and Halpern, their attorneys, could not be deemed a publication for purposes of the law of defamation.

In opposition, S & W argued that the contents of the April 9 letter were not client confidences or secrets within the meaning of DR 4-101 (22 NYCRR 1200.19) because the letter was sent to S & W for the purpose of discharging the firm, not for the purpose of obtaining its legal advice. As to the Margrabes' invocation of the qualified common interest privilege, S & W *170 argued, inter alia, that the privilege provided no basis for dismissing the complaint at the pleading stage, since malice was sufficiently alleged. S & W also disputed the Margrabes' contention that the transmission of the letter to their attorneys did not constitute a publication under the law of defamation. In addition to opposing the dismissal motion, S & W cross-moved for partial summary judgment as to liability. In support of the cross motion, S & W argued that the statements complained of were false and defamatory per se, including the accusation that S & W was charging a usurious rate of interest on its fee. As to the criticisms of the quality of S & W's work, the firm argued that falsity and malice were established as a matter of law by the sworn statements Ms. Margrabe made in the Westchester County**322 action on June 18, 2003, in which she expressed satisfaction both with her representation by S & W in that lawsuit and with the settlement terms S & W had negotiated.

[1] Insofar as appealed from, the IAS court's decision and order, entered on or about March 17, 2005, denied the Margrabes' motion to dismiss, and granted S & W's cross motion for partial summary judgment as to liability solely with respect to the portion of the action based on the usury accusation. We now reverse and dismiss the complaint on the ground that the allegedly defamatory statements in the April 9 letter are protected by the absolute privilege for statements made in the course of, and relating to, judicial proceedings. Although the Margrabes have not argued for dismissal based on the judicial proceedings privilege, we decide the appeal on this ground because the facts that make the absolute privilege applicable appear on the face of the record- indeed, most of those facts are alleged by S & W in the complaint itself-and S & W could not have avoided the effect of the privilege had it been raised by the Margrabes either in the IAS court or on appeal (see Chateau D'If Corp. v. City of New York, 219 A.D.2d 205, 209, 641 N.Y.S.2d 252 [1996],lv. denied88 N.Y.2d 811, 649 N.Y.S.2d 379, 672 N.E.2d 605 [1996] ).

[2][3] An absolute privilege affords a speaker or writer immunity from liability for an otherwise defamatory statement to which the privilege applies, regardless of the motive with which the statement was made (see Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 208-209, 464 N.Y.S.2d 424, 451 N.E.2d 182 [1983];Toker v. Pollak, 44 N.Y.2d 211, 219, 405 N.Y.S.2d 1, 376 N.E.2d 163 [1978];see also Prosser & Keaton, Torts § 114, at 816 [5th ed.] [absolute privilege applies "without regard to (the defendant's) purpose or motive, or the reasonableness of his conduct"]; 2 Dobbs, Torts § 412, at 1153 [2001] [absolute privilege "is not *171 defeated by the defendant's malice"] ). Thus, the protection of an absolute privilege, unlike a qualified privilege, " is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor"(3 Restatement [Second] of Torts, at 243). Absolute privilege has been recognized in "a very few situations where there is an obvious policy in favor of permitting complete

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

38 A.D.3d 163 Page 8
38 A.D.3d 163, 828 N.Y.S.2d 315, 2007 N.Y. Slip Op. 00065
**(Cite as: 38 A.D.3d 163)**

freedom of expression, without any inquiry as to the defendant's motives" (Prosser & Keaton, *supra,* at 816).

[4][5][6][7] Judicial proceedings are among the settings in which an absolute privilege is recognized. The rule is that "a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation"(*Lacher v. Engel,* 33 A.D.3d 10, 13, 817 N.Y.S.2d 37 [2006], citing *Youmans v. Smith,* 153 N.Y. 214, 219, 47 N.E. 265 [1897];*see also Mosesson v. Jacob D. Fuchsberg Law Firm,* 257 A.D.2d 381, 382, 683 N.Y.S.2d 88 [1999],*lv. denied*93 N.Y.2d 808, 691 N.Y.S.2d 382, 713 N.E.2d 417 [1999]; 43A N.Y. Jur.2d, Defamation and Privacy § 154; Kreindler, Rodriguez, Beekman & Cook, New York Law of Torts § 1:50, at 53 [14 West's N.Y. Prac. Series 1997] ). The privilege extends to judge, jurors, counsel, witnesses, and, as relevant here, the parties to the proceeding (*see Park Knoll Assoc.,* 59 N.Y.2d at 209, 464 N.Y.S.2d 424, 451 N.E.2d 182).[FN4] The principle **323 underlying the absolute privilege for judicial proceedings is that "the proper administration of justice depends upon freedom of conduct on the part of counsel and parties to the litigation," which freedom " 'tends to promote an intelligent administration of justice' "(*People ex rel. Bensky v. Warden of City Prison,* 258 N.Y. 55, 59-60, 179 N.E. 257 [1932], quoting *Marsh v. Ellsworth,* 50 N.Y. 309, 312 [1872] ). As a matter of public policy, the possible harm to individuals barred from recovering for defamatory statements made in connection with judicial proceedings*172 is deemed to be "far outweighed by the need ... to encourage parties to litigation, as well as counsel and witnesses, to speak freely in the course of judicial proceedings"(*Martirano v. Frost,* 25 N.Y.2d 505, 508, 307 N.Y.S.2d 425, 255 N.E.2d 693 [1969] ).

> FN4. With regard to Dr. Margrabe, who was not a party to the Westchester County action, we acknowledge that the judicial proceedings privilege generally does not protect a person (other than a judge, juror or witness) who is "neither a litigating party nor an attorney for one of the parties"(*Silverman v. Clark,* 35 A.D.3d 1, 12, 822 N.Y.S.2d 9 [2006] [stating that the judicial proceedings privilege did not protect an attorney who had been discharged as a litigant's counsel, although the complaint was dismissed on other grounds] ). Dr. Margrabe, however, in his capacity as his wife's duly appointed agent for purposes of the Westchester County action, was privileged to speak about that lawsuit to the same extent she was (*see*Restatement [Second] of Torts § 890; Restatement [Second] of Agency § 345). We note that all communications between the Margrabes themselves, on any subject, were absolutely privileged based on their status as a married couple (*see* 2 PJI3d 3:31, at 353 [2006], citing *Lawler v. Merritt,* 182 Misc. 648, 48 N.Y.S.2d 843 [1944],*affd.*269 App.Div. 662, 53 N.Y.S.2d 465 [1945],*Dyer v. MacDougall,* 93 F.Supp. 484 [E.D.N.Y.1950],Restatement [Second] of Torts § 592, and Prosser & Keaton, *supra,* at 824).

[8] In view of the public policy to permit persons involved in a judicial proceeding to write and speak about it freely among themselves, pertinent statements made in the course of such proceedings are afforded the protection of privilege, " 'irrespective of the motive' with which [the statements] are made"(*Wiener v. Weintraub,* 22 N.Y.2d 330, 331, 292 N.Y.S.2d 667, 239 N.E.2d 540 [1968], quoting *Marsh,* 50 N.Y. at 311-312;*see also Mosesson,* 257 A.D.2d at 383, 683 N.Y.S.2d 88;*Ticketmaster Corp. v. Lidsky,* 245 A.D.2d 142, 665 N.Y.S.2d 666 [1997];*Allan & Allan Arts v. Rosenblum,* 201 A.D.2d 136, 138, 615 N.Y.S.2d 410 [1994],*lv. denied*85 N.Y.2d 921, 627 N.Y.S.2d 319, 650 N.E.2d 1321 [1995],*cert. denied*516 U.S. 914, 116 S.Ct. 301, 133 L.Ed.2d 207 [1995]; [2 PJI3d 3:31, *supra,* at 349; Kreindler, Rodriguez, Beekman & Cook, *supra,* at 53] ). Stated otherwise, the judicial proceedings privilege is extended to pertinent statements made in the course of litigation "no matter how great the personal malice of the writer"(*Pecue v. West,* 233 N.Y. 316, 319 [1922] ).

[9] While it is true that the judicial proceedings privilege may be "abused," and, in that event, "protection is withdrawn" (*Youmans,* 153 N.Y. at 220, 47 N.E. 265), the authorities make clear that the sole criterion of whether such abuse has occurred is the pertinence of the statement in question to the proceedings.[FN5] "It is only when the language used goes beyond the bounds of reason and is so clearly impertinent and needlessly defamatory as not to admit of discussion that the privilege**324 is lost"(*Bensky,* 258 N.Y. at 59, 179 N.E. 257). Thus, in

38 A.D.3d 163 Page 9
38 A.D.3d 163, 828 N.Y.S.2d 315, 2007 N.Y. Slip Op. 00065
**(Cite as: 38 A.D.3d 163)**

the case of a defamatory statement that was obviously impertinent to the judicial proceeding in which it was made, the privilege is withdrawn because the malice of the speaker or writer is inferred from the statement's impertinence. However, an offending statement pertinent to the proceeding in which it was made is absolutely privileged, regardless of any malice, bad faith, recklessness or lack of due care with which it was spoken or written, and regardless of its truth or falsity (see *Andrews v. Gardiner,* 224 N.Y. 440, 446, 121 N.E. 341 [1918] [the "statements *173 may have been false, but they were not impertinent"]; *Grasso v. Mathew,* 164 A.D.2d 476, 480, 564 N.Y.S.2d 576 [1991],*lv. dismissed*77 N.Y.2d 940, 569 N.Y.S.2d 613, 572 N.E.2d 54 [1991],*lv. denied*78 N.Y.2d 855, 573 N.Y.S.2d 645, 578 N.E.2d 443 [1991] ["whether true or not, the challenged statement ... (was) absolutely privileged, as a matter of law"] ).

> FN5. As we recently noted in *Lacher v. Engel,* 33 A.D.3d 10, 817 N.Y.S.2d 37, *supra,* one of this Court's precedents suggests that the privilege may not be extended to a litigant who commences a sham lawsuit for the sole purpose of defaming his adversary (*id.* at 13-14, 817 N.Y.S.2d 37, citing *Halperin v. Salvan,* 117 A.D.2d 544, 499 N.Y.S.2d 55 [1986] ). Clearly, no such exception to the privilege could apply in this case, since S & W, which filed the Westchester County action on Ms. Margrabe's behalf, obviously does not allege that the Westchester County action was a sham proceeding.

[10][11][12] Whether a statement is "at all pertinent to the litigation"(*Mosesson,* 257 A.D.2d at 382, 683 N.Y.S.2d 88) is determined by an "extremely liberal" test (*Black v. Green Harbour Homeowners' Assn., Inc.,* 19 A.D.3d 962, 963, 798 N.Y.S.2d 753 [2005] ). A statement made in the course of judicial proceedings is privileged "if, by any view or under any circumstances, it may be considered pertinent to the litigation"(*Martirano,* 25 N.Y.2d at 507, 307 N.Y.S.2d 425, 255 N.E.2d 693;*see also Lacher,* 33 A.D.3d at 14, 817 N.Y.S.2d 37). Thus, "the narrow and technical rules normally applied to determine the admissibility of evidence"(*Martirano,* 25 N.Y.2d at 508, 307 N.Y.S.2d 425, 255 N.E.2d 693) are not used to determine a statement's pertinence for purposes of the privilege analysis. To be actionable, a statement made in the course of judicial proceedings "must be so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame"(*id.; see also Cavallaro v. Pozzi,* 28 A.D.3d 1075, 1077, 814 N.Y.S.2d 462 [2006];*Grasso,* 164 A.D.2d at 479, 564 N.Y.S.2d 576). Stated otherwise, "the possibly pertinent [for purposes of the judicial proceedings privilege] need be neither relevant nor material to the threshold degree required in other areas of the law," and "the barest rationality, divorced from any palpable or pragmatic degree of probability, suffices" to establish the offending statement's pertinence to the litigation (*Seltzer v. Fields,* 20 A.D.2d 60, 62, 244 N.Y.S.2d 792 [1963],*affd.*14 N.Y.2d 624, 249 N.Y.S.2d 174, 198 N.E.2d 368 [1964];*see also Mosesson,* 257 A.D.2d at 382, 683 N.Y.S.2d 88;*Grasso,* 164 A.D.2d at 479, 564 N.Y.S.2d 576; 43A N.Y. Jur. 2d, Defamation and Privacy § 154).

[13][14] The pertinence of a statement made in the course of judicial proceedings is a question of law for the court (*Bensky,* 258 N.Y. at 60, 179 N.E. 257;*Mosesson,* 257 A.D.2d at 382, 683 N.Y.S.2d 88;*Grasso,* 164 A.D.2d at 479, 564 N.Y.S.2d 576). In answering that question, any doubts are to be resolved in favor of pertinence (*Mosesson,* 257 A.D.2d at 382, 683 N.Y.S.2d 88, citing *Seltzer,* 20 A.D.2d at 63, 244 N.Y.S.2d 792;*see also Baratta v. Hubbard,* 136 A.D.2d 467, 469, 523 N.Y.S.2d 107 [1988] ). Pertinence is properly determinable on a motion to dismiss addressed to the pleadings and documentary evidence alone (*see e.g. Arts4All, Ltd. v. Hancock,* 5 A.D.3d 106, 773 N.Y.S.2d 348 [2004];*Carniol v. Carniol,* 288 A.D.2d 421, 422, 733 N.Y.S.2d 485 [2001];*Impallomeni v. Meiselman, Farber, Packman & Eberz,* 272 A.D.2d 579, 708 N.Y.S.2d 459 [2000],*lv. denied*95 N.Y.2d 764, 716 N.Y.S.2d 39, 739 N.E.2d 295 [2000];**325*Ticketmaster Corp. v. Lidsky,* 245 A.D.2d 142, 665 N.Y.S.2d 666, *supra;*174*Lieberman v. Hoffman,* 239 A.D.2d 273, 658 N.Y.S.2d 18 [1997];*Feldman v. Bernham,* 6 A.D.2d 498, 500, 179 N.Y.S.2d 881 [1958],*affd.*7 N.Y.2d 772, 194 N.Y.S.2d 41, 163 N.E.2d 145 [1959] ).

[15][16] The absolute privilege is not limited to statements made on the record during oral testimony or argument, or set forth in formal litigation documents, such as pleadings, affidavits, and briefs. In the interest of "encourag[ing] parties to litigation to communicate freely in the course of judicial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

proceedings"(*Grasso, 164 A.D.2d at 480, 564 N.Y.S.2d 576),* the privilege is extended to all pertinent communications among the parties, counsel, witnesses, and the court. Whether a statement was made in or out of court, was on or off the record, or was made orally or in writing, the rule is the same-the statement, if pertinent to the litigation, is absolutely privileged (*see Martirano v. Frost,* 25 N.Y.2d 505, 307 N.Y.S.2d 425, 255 N.E.2d 693, *supra* [party's unsworn statement in open court]; *Youmans v. Smith,* 153 N.Y. 214, 47 N.E. 265, *supra* [letter from attorney to witness subpoenaed for trial]; *Arts4All, Ltd. v. Hancock,* 5 A.D.3d at 108, 773 N.Y.S.2d 348 [letter from witness to judge]; *Impallomeni v. Meiselman, Farber, Packman & Eberz,* 272 A.D.2d at 580, 708 N.Y.S.2d 459 [letter from attorney to judge]; *Lemberg v. Blair Communications,* 258 A.D.2d 291, 292-293, 685 N.Y.S.2d 435 [1999] [out-of-court verbal exchange between attorneys]; *Papa v. Regan,* 256 A.D.2d 452, 453, 682 N.Y.S.2d 94 [1998] [communications among parties to a matrimonial action and their respective counsel]; *Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae,* 243 A.D.2d 168, 182-183, 674 N.Y.S.2d 280 [1998],*lv. dismissed*92 N.Y.2d 962, 683 N.Y.S.2d 172, 705 N.E.2d 1213 [1998] [statement at settlement conference]; *Caplan v. Winslett,* 218 A.D.2d 148, 152-153, 637 N.Y.S.2d 967 [1996] [out-of-court verbal exchange between attorneys]; *Klein v. McGauley,* 29 A.D.2d 418, 419, 288 N.Y.S.2d 751 [1968] [off-the-record statement by attorney to adverse party in court clerk's office, in presence of others]; *see also O'Brien v. Alexander,* 898 F.Supp. 162, 170, 171 [S.D.N.Y.1995],*mod. on other grounds*101 F.3d 1479 [2d Cir.1996] [statements by party's representatives to potential trial witnesses; applying New York law] ).

As the foregoing authorities would lead one to expect, New York courts have consistently held that a communication of the kind at issue here-a letter among parties and counsel on the subject of pending or prospective litigation-enjoys the protection of the absolute privilege for judicial proceedings. For example, the Third Department recently held that the absolute privilege applied to statements in a letter from the board of directors of a homeowners' association to the association's members reporting on the status of litigation to which the association was a party (*see Black,* 19 A.D.3d at 963, 798 N.Y.S.2d 753). Similarly, in *175 *Vodopia v. Ziff-Davis Publ. Co.,* 243 A.D.2d 368, 663 N.Y.S.2d 178 [1997], this Court affirmed the dismissal of an attorney's defamation claim that was based on "a letter written by opposing counsel and sent to [the attorney] and directly to [the attorney's] client during the course of negotiations to settle a copyright lawsuit threatened by [the attorney's] client"(*id.).* We held that the allegedly defamatory statements in the letter were absolutely privileged because the letter was written "in an attempt to settle the claim by [the attorney's] client, and its contents ... were relevant and pertinent to that claim"(*id.; see also Lieberman v. Hoffman,* 239 A.D.2d 273, 658 N.Y.S.2d 18, *supra* [statements in letter from attorneys to their client's opponent, concerning client's claims against opponent on which **326 suit was contemplated, were absolutely privileged] ). The absolute privilege has also been held to apply to statements in a letter concerning ongoing matrimonial litigation from one divorcing spouse to the other and to the writer's own attorney (*see Grasso,* 164 A.D.2d at 478, 479, 564 N.Y.S.2d 576); and to statements in a letter from an officer of a bankrupt corporation to the corporation's directors, the members of its creditors' committees, and other parties interested in the corporation's bankruptcy case (*see Friedman v. Alexander,* 79 A.D.2d 627, 628, 433 N.Y.S.2d 627 [1980] ).[FN6]

> FN6.*See also Schwartz v. Bartle,* 49 Misc.2d 848, 268 N.Y.S.2d 715 [1966] [absolute privilege applied to letters from an informal creditors' committee regarding bankruptcy court proceedings]; *Simon v. Potts,* 33 Misc.2d 183, 225 N.Y.S.2d 690 [1962] [absolute privilege applied to letter concerning a probate proceeding from attorney for temporary administrator to attorney for testator's widow, which letter was copied to all counsel of record and to the presiding surrogate]; *Zirn v. Cullom,* 187 Misc. 241, 63 N.Y.S.2d 439 [1946] [absolute privilege applied to letter making an offer to settle litigation].

In this case, the allegedly defamatory statements in the April 9 letter concern, on their face, the quality of S & W's representation of Ms. Margrabe and her brother in the Westchester County action and in the negotiations to settle it, and the propriety of S & W's fee arrangement for that representation. The statements were made in a letter that, besides being sent to S & W itself, was "directed solely to parties legitimately involved in the proceeding" with which the letter was concerned (*Friedman,* 79 A.D.2d at 628, 433 N.Y.S.2d 627), namely, Ms. Margrabe's co-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff in the Westchester County action (Tony Rusciano) and the two non-S & W attorneys she had retained for independent advice concerning the settlement of that lawsuit (Lewis and Halpern). Thus, the publication of the statements complained of cannot be said to have been "so outrageously out of context as to permit one to conclude, from the mere fact that the statement[s] w[ere] *176 uttered, that [they] w[ere] motivated by no other desire than to defame"(Martirano, 25 N.Y.2d at 508, 307 N.Y.S.2d 425, 255 N.E.2d 693). On the contrary, the April 9 letter makes clear that the Margrabes believed (whether rightly or wrongly) that Ms. Margrabe would be disadvantaged if S & W continued to represent Tony Rusciano and persuaded him to consummate the settlement in the form approved by the court. As to the transmission of the letter to Lewis and Halpern, the legitimacy of a client's motive to keep her attorneys fully informed about litigation in which she is involved, and for which the attorneys have been retained to provide advice, requires no elaboration. Plainly, the Margrabes had motives "other [than the] desire ... to defame" for sharing their criticisms of S & W with Tony Rusciano, Halpern and Lewis.FN7 Accordingly, the absolute privilege for statements made in the course of judicial proceedings bars this action.

> FN7. S & W's verified complaint alleges in conclusory fashion, "[u]pon [unspecified] information and belief," that the Margrabes published the April 9 letter to other third parties not yet known to S & W. In opposing the motion to dismiss and on the instant appeal, however, S & W has not relied on this allegation, for which no factual, nonspeculative basis has been offered.

[17] Before the motion court, the Margrabes argued (without specific mention of the judicial proceedings privilege) that their transmission of the April 9 letter to Lewis and Halpern should not be considered a publication because each of these lawyers had an attorney-client relationship with Ms. Margrabe. In arguing for the legal sufficiency of the complaint, S & W pointed to Halpern's express refusal, based **327 on his prior professional relationship with Warmflash, to represent Ms. Margrabe in any fee dispute with S & W. This limitation on the scope of the attorney-client relationship, S & W contended, showed that the Margrabes sent the letter to Halpern purely out of malice. The motion court appears to have been persuaded by S & W on this score. We find that the limitations of the scope of Halpern's representation cannot, as a matter of law, defeat the application of the judicial proceedings privilege to the April 9 letter.FN8

> FN8. On appeal, S & W appears to suggest that the subject matter of the April 9 letter was also outside the scope of Lewis's representation. This suggestion is clearly without merit. Not only did Lewis never warn the Margrabes that he could not represent them against S & W, he actually did represent them against S & W in the fee dispute that arose after the firm was discharged. Indeed, in the motion court, Lewis submitted an affidavit in support of the Margrabes stating that, before the April 9 letter was sent, he reviewed it and gave Dr. Margrabe legal advice about its contents.

[18] Notwithstanding any warning Halpern may have given the Margrabes that he would not represent Ms. Margrabe against S*177 & W, the fact remains that, at the time the April 9 letter was sent, Halpern was advising Ms. Margrabe on the settlement of the Westchester County action-which was precisely the subject of the April 9 letter.FN9 Thus, whatever limitations Halpern had placed on his role in the Westchester County action, the statements in the April 9 letter concerning S & W's handling of that action and the negotiations therein plainly "satisfy the extremely liberal test of being possibly or plausibly relevant or pertinent, by any view of the circumstances, and without reference to technical meaning or strict legal interpretation of the terms relevant or pertinent"(Grasso, 164 A.D.2d at 479, 564 N.Y.S.2d 576). In this regard, it must be borne in mind that the measure of pertinence is what "a reasonable man [i.e., a layperson rather than a lawyer] might think ... [has sufficient appearance of connection to the case to be] relevant"(Seltzer, 20 A.D.2d at 63, 244 N.Y.S.2d 792, quoting 53 CJS, Libel and Slander § 104[c][b]; see also Lacher, 33 A.D.3d at 14, 817 N.Y.S.2d 37;Baratta, 136 A.D.2d at 469, 523 N.Y.S.2d 107). Moreover, to reiterate, any doubt is to be resolved in favor of pertinence. In view of these principles, it cannot be said that Halpern's refusal to represent Ms. Margrabe against S & W, by itself, rendered the discussion of S & W's handling of the Westchester County action in the April 9 letter impertinent to the aspects of that lawsuit on which Halpern was advising Ms. Margrabe. Moreover, since the privilege extends to

any statement that "may possibly bear on the issues in litigation now or at some future time"(*Seltzer,* 20 A.D.2d at 62, 244 N.Y.S.2d 792), the possibility (however remote) that Halpern might in the future change his mind and agree to represent Ms. Margrabe against S & W also requires extending the privilege to the transmission of the April 9 letter to Halpern. In short, to restrict the application of the privilege to statements in the April 9 letter based on the bounds of Halpern's role in the Westchester County action would run afoul of Judge Cardozo's admonition that " [t]here is no room in such matters for any strict or narrow test"(*Andrews,* 224 N.Y. at 445, 121 N.E. 341).

> FN9. The retainer letter stating that Halpern would not represent Ms. Margrabe in any fee dispute with S & W postdates the April 9 letter. While it cannot be determined from the present record when Halpern first placed this limitation on the scope of his employment, we assume, for purposes of this discussion, that he did so prior to April 9, 2004.

Because we find that the Margrabes' motion to dismiss the complaint pursuant **\*\*328** to CPLR 3211(a)(1) and (7) should have been granted on the ground that the action is barred by the judicial proceedings privilege as a matter of law, we need not consider the other issues raised by the parties. Among the issues\*178 addressed by the parties that we expressly decline to consider (each of which the motion court decided in S & W's favor) are: (1) whether the action is barred by DR 4-101 (22 NYCRR 1200.19) as an impermissible use of client confidences or secrets; (2) whether the distribution of the April 9 letter to Tony Rusciano, Halpern and Lewis is potentially protected by the qualified "common interest" privilege; (3) whether S & W's fee arrangement was usurious; and (4) whether the usury accusation, if false, constituted defamation per se. We also note that the Margrabes have not argued that any of the allegedly defamatory statements are nonactionable statements of opinion (*see Gross v. New York Times Co.,* 82 N.Y.2d 146, 152-154, 603 N.Y.S.2d 813, 623 N.E.2d 1163 [1993] ), and we therefore have not considered whether such an argument would have merit.

We emphasize that, in deciding this appeal, we express no opinion on the merits of any of the underlying disputes between S & W and the Margrabes, or on the validity of any of the criticisms of the firm expressed by the Margrabes in the April 9 letter. We have considered only whether the allegations of the complaint and the undisputed documentary evidence establish, as a matter of law, that the allegedly defamatory statements in the April 9 letter enjoy the protection of the absolute privilege for pertinent statements made in the course of judicial proceedings. Having determined that the statements are so protected, we are required to dismiss the complaint regardless of any damage to S & W's reputation that may have resulted from the Margrabes' limited distribution of the April 9 letter. This result is necessary to give assurance to all participants in judicial proceedings that they may speak candidly in connection with the proceeding, without fear of incurring liability or the burden of further litigation, thereby ensuring the proper functioning of our adversarial system of justice (*see Martirano,* 25 N.Y.2d at 508-509, 307 N.Y.S.2d 425, 255 N.E.2d 693).

Finally, the Margrabes also appeal from the order entered August 17, 2005, which denied their motion for reargument or renewal. To the extent the August 2005 order is appealable, the appeal from that order is rendered academic by our disposition of the appeal from the March 2005 order. We therefore dismiss the appeal from the August 2005 order.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about March 17, 2005, which, insofar as appealed from, denied defendants' motion to dismiss the complaint pursuant to \*179CPLR 3211(a)(1) and (7), and granted in part plaintiffs' cross motion for partial summary judgment as to liability, should be reversed, on the law, with costs, the motion to dismiss granted, and the cross motion denied in its entirety. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint. The appeal from the order, same court and Justice, entered August 17, 2005, which, insofar as appealable, denied defendants' motion for renewal, should be dismissed, without costs, as academic.

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about March 17, 2005, reversed, on the law, with costs, defendants' motion to dismiss granted, and plaintiffs' cross motion for partial summary judgment denied in its entirety. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint. Appeal

38 A.D.3d 163                                                                                                    Page 13
38 A.D.3d 163, 828 N.Y.S.2d 315, 2007 N.Y. Slip Op. 00065
**(Cite as: 38 A.D.3d 163)**

from order, **\*\*329** same court and Justice, entered August 17, 2005, dismissed, without costs, as academic.

All concur.
N.Y.A.D. 1 Dept.,2007.
Sexter & Warmflash, P.C. v. Margrabe
38 A.D.3d 163, 828 N.Y.S.2d 315, 2007 N.Y. Slip Op. 00065

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.