EC



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

PRESENT: W. DENIS DONOVAN, J.S.C.

To commence the statutory time period for appeals as of right (CPLR 5513[a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.

-----------------------------------------------------------------X
ELIZABETH MARGRABE and ANTHONY J.
RUSCIANO, III, as Shareholders of RUSCIANO
& SON CORP., SECOR LANE CORP. and
VINRUS CORP., suing in the right of
RUSCIANO & SON CORP., SECOR LANE CORP.
and subsidiaries, and VINRUS CORP.,
ELIZABETH MARGRABE and ANTHONY
RUSCIANO, III, Individually,

                          POST-HEARING
                          DECISION AND ORDER

           Plaintiffs,

-against-                      Index No. 10032/01

ANTHONY J. RUSCIANO, II, RUSCIANO & SON
10 CORP., VINRUS CORP., SECOR LANE CORP.
and subsidiaries, PVE COMPANY JOINT
VENTURE, PVE II CO., and TONGENE REALTY
COMPANY,
           Defendants.
-----------------------------------------------------------------X
DONOVAN, J.

     Plaintiffs Elizabeth Margrabe and Anthony Rusciano, III, together retained the firm of Sexter & Warmflash to bring an action to recover their share of funds allegedly diverted and looted from the family businesses by defendant Anthony Rusciano, II. The plaintiffs, who executed separate retainer agreements in April, 2001, are siblings who stood on very different financial footings. Elizabeth, being in the better financial position, agreed to

finance her brother's expenses during the litigation by paying his legal fees and providing other financial assistance in exchange for equal division of the recovery despite Anthony's potentially greater interest in the defendant corporations. This arrangement was referred to as the "Betty-Tony Agreement."

On June 18, 2003, counsel for both sides dictated a settlement onto the record in open court. The settlement was set out in broad, generalized terms, with the understanding that a formal and more detailed written version would be submitted to the court for signature within 30 days. Despite the absence of minute detail, the dictated settlement was sufficiently fleshed out to allow an allocution on the record.

After the court appearance, counsel could not agree on a written stipulation that would embody the terms dictated onto the record. Meanwhile, in August, 2003, a difference of opinion concerning the interpretation of the Betty-Tony Agreement surfaced between the siblings. Anthony interpreted the agreement as meaning that if he agreed to the pending settlement and Elizabeth pressed on through trial, Anthony would keep the entire amount of his settlement. Elizabeth interpreted that agreement as meaning that any settlement made by Anthony would be divided between them, with any recovery awarded by Elizabeth after trial divided between them as well. Motion practice regarding the settlement followed, resulting in a March 22, 2004 decision and order that resolved the last remaining disputed issue.

With the action settled, a dispute arose between plaintiff Elizabeth Margrabe and Sexter & Warmflash over legal fees. In July and August, 2004, counsel moved to fix a lien on the settlement proceeds for the amount of its outstanding fees. Plaintiff Elizabeth Margrabe, who had terminated her representation by the firm, moved to disqualify counsel from continuing to represent co-plaintiff Anthony based on an alleged conflict of interest. In a decision dated September 1, 2004, this court fixed the lien in the amount sought by Sexter & Warmflash. The court also granted the motion to disqualify, but noted that the disqualification," which applies prospectively only, does not affect the settlement of this action. The existence of a potential conflict of interest between the co-plaintiffs was disclosed in the very first paragraph of the retainer agreement executed on April 18, 2001. Plaintiff Elizabeth Margrabe 'lived' with the potential conflict for over three years of litigation before making this application."

In October, 2004, plaintiff moved to renew the prior decision to the extent it fixed counsel's lien. The law firm cross-moved to reargue the disqualification. In a decision dated October 28, 2004, this court granted the motion to renew and, upon renewal, vacated the lien and the direction that escrowed funds in the amount of the lien be turned over to the law firm. The court then directed a hearing to determine three issues: 1) the amount of legal fees actually paid to Sexter & Warmflash; 2) the reasonable value of the legal services rendered by Sexter & Warmflash during its representation of plaintiffs; and 3) what part of the escrowed funds, if any, are to be turned over to Sexter & Warmflash for any uncompensated legal services. The court denied the law firm's cross-motion to reargue the issue of disqualification.

This court conducted the hearing over four days on December 20, 2004, February 10, 2005, April 1, 2005, and June 1, 2005. The court then elicited post-hearing submissions, including proposed findings of fact and conclusions of law. On August 22, 2005, this court signed the law firm's proposed order and adopted the law firm's proposed findings of fact. In sum, the court found that the law firm had not been discharged for cause and that the law firm was entitled to the entire balance of the escrowed funds as reasonable attorneys fees.

In June, 2006, plaintiff Elizabeth Margrabe again moved to renew her opposition to the law firm's July, 2004 motion to fix the amount of the lien and to vacate this court's August 22, 2005 order, which was the end result of the motion to fix the amount of the lien. In support, she pointed to the December 13, 2005 EBT testimony of David Warmflash, given in a related matter, in which he admitted making a personal loan of $8,000.00 to Anthony at some point prior to April 9, 2004.

By decision and order dated June 29, 2006, this court granted renewal. The court continued:

> However, given the complexities of the post-settlement proceedings, the court, upon renewal, cannot vacate the August 22, 2005 order without re-opening the hearing. Had the fact of this loan been revealed earlier, the court would have considered the loan as an additional issue to be addressed at the hearing. For example, the court would have explored the timing of the loan and whether, considering the amount of this loan with the sums the Margrabes advanced to Anthony, it negated the unity between the joint clients.
>
> Accordingly, the court vacates the August 22, 2005 order as well as the findings of fact and conclusions of law adopted therewith for the purpose of re-opening and continuing the hearing.

On March 6, 2007, the Appellate Division, Second Department, ruled on plaintiff Margrabe's appeal from the September 1, 2004 order that fixed the lien and directed the escrow agent to pay to Sexter & Warmflash the sum of $121,659.74. The Appellate Division dismissed the appeal on the ground that this court's October 29, 2004 order vacated the lien. However, the Appellate Division also ruled:

> The issues raised by the appellant regarding the reasonableness of the legal fees and her usury defense to the payment of any fees appear to be interwoven with all the issues that the Supreme Court will be addressing at the hearing. [*Margrabe v Rusciano*, 38 AD 3d 503, 504 (2d Dept. 2007)]

3

The hearing was held on April 3, 2007. Testimony related primarily to the $8,000.00 loan that was the subject of the June, 2006 motion to renew. In post-hearing submissions, both sides have addressed the issues of the reasonableness of the attorneys fees and the usury defense.

The continued hearing consisted of the testimony of David Warmflash, Esq., a shareholder in Sexter & Warmflash, and plaintiff Elizabeth Margrabe.

It appears from the testimony, and the exhibits received into evidence, that Mr. Warmflash loaned the $8,000.00 to Anthony Rusciano and his wife on March 30, 2004. It also appears that at the time of the loan, Mr. Warmflash knew that Elizabeth Margrabe and her husband were advancing funds to Anthony Rusciano and his wife, for living expenses, at the rate of approximately $8,000.00 per month; that the Margrabes were withholding the next $8,000.00 payment; and that Mr. Warmflash did not inform Elizabeth Margrabe of the loan. Less clear, though more likely than not based on the evidence in the record, is that Mr. Warmflash knew that at the time of the loan his then-partner, Michael Present, Esq., was preparing to report to the Margrabes on the status of their loan extensions to Anthony Rusciano.

Mr. Warmflash's actions ran afoul of DR 5-101, DR 5-103, and DR 5-104. These rules involve, respectively, conflict of interest, avoiding acquisition of interest in a litigation, and transactions between lawyer and client. However, as misguided as this loan seems to have been, the court cannot discern any practical, deleterious effect on counsel's relationship with the two clients.

At the time of the loan, Elizabeth Margrabe was approximately 10 days away from writing the April 9, 2004 letter that would terminate Sexter & Warmflash's representation of her. Nothing in the record indicates that either Mr. Warmflash or the firm of Sexter & Warmflash took or refrained from any action that could be explained in terms of the conflict of interest between the two plaintiffs. Plaintiff Margrabe points to her reluctance to close on the settlement and to Mr. Warmflash's communications threatening to proceed to the closing without her. While this dispute may seem, from Elizabeth Margrabe's point of view, to be evidence of the alleged conflict of interest, Mr. Warmflash accurately stated at the time that there was no credible legal barrier to closing. This court, in its decision and order of March 22, 2004, had resolved the final dispute over the terms of the settlement that had embroiled the parties in motion practice for approximately nine months.

All settlements are not perfect. Clients are not always perfectly satisfied with the terms of the settlements they reach. However, dissatisfaction, second-guessing, and suspicion do not necessarily mean that a settlement resulted from an actual conflict of interest when one firm represents multiple litigants. On the surface, the $8,000.00 loan was an unfortunate decision. Looking beneath the surface, however, it did not force a settlement that the court already had not directed.

Therefore, having re-opened the hearing, the court finds that the loan from Mr. Warmflash to Mr. Rusciano and his wife did not negate the unity between the joint clients.

There are two additional issues to be considered by the court.

As stated above, the order entered by this court on September 1, 2004, fixed Sexter & Warmflash's lien on settlement proceeds being held in escrow at $121,659.75 and directed the escrow agent to turn over the funds along with any accrued interest. Plaintiff Margrabe appealed this order. Subsequently, by decision and order dated October 29, 2004, this court vacated the lien and direction that the escrow agent pay over the funds and instead directed that a hearing be held. That hearing, stretched out over four days at periodic intervals, resulted in a finding that Sexter & Warmflash had not been discharged for cause and that it was entitled to the escrowed funds.

Plaintiff Margrabe, after learning of the $8,000.00 loan, then successfully moved to renew. However, before the hearing was re-opened, the Appellate Division ruled on the original appeal. It dismissed the appeal from the September 1, 2004 order because the October 29, 2004 order had superseded it. But the Appellate Division did not consider plaintiff Margrabe's defenses of usury and reasonableness because of the imminent hearing.

At the hearing, neither side presented any evidence on these two issues. Both sides, however, addressed them in their post-hearing submissions.

In this case, the retainer agreement required plaintiffs to pay 50% of the current legal fees billed by Sexter & Warmflash on a monthly basis. Then "upon the conclusion of the litigation and [plaintiffs'] receipt of payment for [their] interest in the Rusciano business entities," plaintiffs were to pay the firm 100 % of its total accrued legal fees for a full payment of 150% of its legal fees.

Plaintiff Elzabeth Margrabe argues that this fee arrangement, despite the fact that she agreed to it, is both excessive and usurious as a matter of law. She contends that the 50% additional compensation beyond the properly billed hours does not represent compensation for services rendered. Therefore, it could only be a financial accommodation until the completion of the litigation. This 50% premium on properly billed fees, plaintiff also argues, is usurious because it exceeds of the 16% interest cap set out in Banking Law § 14-a and the 25% cap set out in Penal Law § 190.40.

DR 2-106 prohibits a lawyer from entering into an agreement to charge an illegal or excessive fee. Factors cited in the Rule that are germane to the issues here include: the novelty and difficulty of the questions involved; the amount involved and the result obtained; and whether the fee is fixed or contingent. Applying these factors to this case, the fee, no matter how it is mathematically characterized, is not excessive. First, plaintiff Elizabeth Margrabe operated under the retainer agreement and accepted the invoices without objection for approximately three years. Second, Sexter & Warmflash obtained a substantial recovery on behalf of both plaintiffs. Despite the fact that this action was brought as a derivative suit, which meant plaintiffs were suing on behalf of the corporations in which they were shareholders, the firm negotiated a buy-out of their interests that

5

resulted in a monetary settlement for plaintiffs themselves. Third, even with the 50% premium, the total amount of the fee agreed to by plaintiffs and sought by the firm is less than 5% of the total recovery achieved by the settlement. Finally, as observed by the court in the court in the related defamation action brought by Sexter & Warmflash in New York County Supreme Court, the full payment of the legal fee was predicated upon two conditions: the conclusion of the litigation and plaintiff's receipt of payment for her interest. The court construed the retainer agreement as a contingent payment contract.[1]

Under DR 2-106, a lawyer is permitted to charge interest on a legal fee. The client must be advised in advance and must consent to the charge. In addition, the rate must be reasonable.

Plaintiff, who clearly was aware of the charge and consented to its imposition, now contends that the rate was usurious and therefore is unreasonable as a matter of law. Again, as observed by the New York County Supreme Court, the retainer was not usurious. First, there was no explicit "loan" or "forebearance" nor did it call for the payment of any "interest." Second, having found that the retainer agreement was a contingent payment contract, the court applied the rule that a contingent payment contract cannot be a loan or forebearance subject to the usury law [*Waterbury v City of Oswego*, 251 AD 2d 1060 (4th Dept. 1998)]. This court adopts the same rationale here.

Based on the foregoing, the court reinstates its original finding that the fee sought by Sexter & Warmflash is reasonable and the escrow agent is directed, upon service of a copy of the order to be settled hereon together with notice of entry, to pay to Sexter & Warmflash the sum of $121,659.74, plus any accrued interest.

Settle order.

ENTER:

_____
HON. W. DENIS DONOVAN
Justice Supreme Court

Dated:    July 7, 2007
          White Plains, New York

---

[1] Though the Appellate Division, First Department, later reversed the Supreme Court decision and dismissed the entire defamation complaint on the theory of absolute privilege, the Court affirmatively declined to consider the underlying issues raised by the parties [*Sexter & Warmflash v Margrabe*, 38 AD 3d 163, 171 (1st Dept. 2007)].

To:     GREENBERG & MASSARELLI
        2929 Purchase Street
        Purchase, New York 10577

        SEXTER & WARMFLASH
        115 Broadway
        New York, New York 10006

7