UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ELIZABETH MARGRABE,

                        Plaintiff,

          -against-

SEXTER & WARMFLASH, P.C., DAVID
WARMFLASH and MICHAEL PRESENT,

                     Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

01 Civ. 4498 (KMK) (GAY)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:


      Plaintiff Elizabeth Margrabe brings this diversity action against defendants Sexter

& Warmflash P.C., David Warmflash, and Michael Present, alleging legal malpractice,

breach of fiduciary duty, prima facie tort, and intentional infliction of emotional distress.

Presently before this Court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure ("FRCP").  For the reasons set forth below, I

respectfully recommend that defendants' motion be GRANTED.


## I.  BACKGROUND

      The action arises out of defendants' representation of plaintiff in a shareholders'

derivative suit before the Supreme Court of New York, Westchester County.  That

action, <u>Elisabeth Margrabe and Anthony Rusciano III, et al. v. Anthony J. Rusciano, II et

al.</u>, Index No. 10032/01 (N.Y. Sup. Ct. 2004), is now settled.  As a result of the

settlement, the underlying defendant agreed to pay plaintiff and her brother $8,375,000.

Before the settlement was finalized, Justice Donovan asked plaintiff if she was happy

with and agreed to the settlement.  Plaintiff responded that she understood the terms of

the settlement and was "very pleased" with the terms and with the efforts of her counsel.

Shortly after the settlement was finalized on June 18, 2003, plaintiff executed a power of

attorney appointing her husband, William Margrabe, as her attorney-in-fact for the

express purpose of "approving the formal closing documents to consummate the

settlement."  As early as July 2, 2003, Mr. Margrabe had engaged other counsel.  Mr.

Margrabe formally retained attorney Philip Halpern on July 2, 2003 and attorney Harry

Lewis on November 17, 2003 as "co-counsel."   Mr. Margrabe sent a final version of a

letter to defendants on April 8, 2004 terminating their representation.  This final letter

was also signed by the plaintiff.

On May 14, 2004 defendants filed a §475 New York Judiciary Law fee dispute

proceeding against plaintiff in the New York Supreme Court, Westchester County.  By

Decision and Order dated September 1, 2004, the underlying court fixed a lien in the

amount of $121,659.74 in favor of Sexter & Warmflash.  On October 28, 2004 the

underlying court granted a motion to renew (and by doing so vacated the lien) and

directed a hearing to determine the amount of legal fees actually paid to Sexter &

Warmflash, the reasonable value of the legal services rendered in its representation of

plaintiff, and what portion of the escrowed funds were to be turned over for

uncompensated legal services.  By Decision and Order dated July 9, 2007, the

underlying court reinstated its original finding that the fee sought by Sexter & Warmflash

was reasonable and that the firm was not terminated for cause.  Plaintiff has since filed

both a motion to reargue the New York Supreme Court decision and a notice of appeal

to the New York Supreme Court, Appellate Division, Second Department.  The instant

2

action was filed on April 6, 2007.

## II.  RULE 12(b)(6) STANDARD OF REVIEW

In evaluating a motion to dismiss a complaint under FRCP 12(b)(6), this Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  In doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."  Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).  Further, for purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted).  Ultimately, the Court must grant a 12(b)(6) motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

## III.  DISCUSSION

### A.  Legal Malpractice Claim

In order to recover damages for legal malpractice, a plaintiff must plead and prove: (1) that defendants failed to exercise the degree of care, skill and diligence commonly possessed by a member of the legal profession; (2) that defendants'

negligence was the proximate cause of the loss sustained; (3) that plaintiff incurred damages as a direct result of defendants' actions; and (4) that plaintiff would have obtained a better underlying result had defendants exercised due care. See Andrews Beverage Distrib. v. Stern, 215 A.D.2d 706, 706, 627 N.Y.S.2d 423 (2d Dept. 1995).

Defendants first argue that the malpractice claim is barred by the doctrines of *res judicata* and collateral estoppel. In the alternative, defendants argue that the claim is barred by the statute of limitations. Finally, defendants claim that plaintiff has failed to state a viable claim for legal malpractice.

For purposes of this motion, the Court need go no further than the defendants' first argument. New York law governs plaintiff's malpractice claim in this diversity action. Under New York law it is well settled that "a judicial determination fixing the value of a professional's service necessarily decides that there was no malpractice. This rule applies where an attorney seeks a charging lien [see Judiciary Law, §475] for services rendered . . . in the underlying action." Lilipani v. Collins, Collins & Dinardo, P.C., 1992 WL 168267, *3 (S.D.N.Y. Jun. 25, 1992) (internal citations omitted); see also Best v. Law Firm of Queller and Fischer, et al., 278 A.D.2d 441, 718 N.Y.S.2d 397 (2d Dept. 2000).

In his decision in the §475 action underlying the instant case, Justice Donovan of the New York Supreme Court wrote:

> The settlement may not have been perfect. It may have presented problems that required hours of additional negotiation among counsel and two months for clarification determined by the courts. But the stipulation entered after the March 29 decision was substantially the same stipulation dictated onto the record on June 18, 2003, when plaintiff Elizabeth Margrabe expressed her satisfaction, both with the settlement itself and Sexter & Warmflash's representation. Her attitude toward the settlement

and her attorneys may have changed over the intervening months, but her obligation to pay counsel fees as required by her retainer agreement did not.  As to the fees themselves, the court agrees with counsel's characterization of the fees as reasonable.

Margrabe et al. v. Rusciano et al., index No. 10032/01 (N.Y. Sup. Ct. 2004).

It is evident from Justice Donovan's order that the issues underlying plaintiff's malpractice claim were decided in the State court proceeding.  Plaintiff does not dispute the preclusive effect of such a state court decision on a subsequent legal malpractice claim.[1]  For the above reasons, it is respectfully recommended that with respect to this claim, defendants' motion should be GRANTED.

### B.  Breach of Fiduciary Duty Claim

Under New York law, to succeed in a breach of fiduciary duty claim, plaintiff must demonstrate: (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages resulting from that breach.  SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d 329, 342 (2d Cir. 2004);  Indep. Asset Mgmt. LLC v. Zanger, 2008 WL 715478, *4 (S.D.N.Y. Mar. 18, 2008).  New York law also requires a showing of proximate cause and actual damages.  See Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 271-72,  780 N.Y.S.2d 593 (1st Dept. 2004). New York courts have consistently held that a claim for breach of fiduciary duty which is premised on the same facts and seeking identical relief

---

[1] Plaintiff has instead filed a separate motion for a stay or transfer of the action to the suspense calendar pending a motion to reargue and an appeal of the New York Supreme Court decision.  This motion is denied in a separate Decision and Order, issued on this date.

as a legal malpractice claim is redundant and should be dismissed.  Id.; Estate of

Nevelson v. Carro, Spanbock, Kaster & Cuiffo, 290 A.D.2d 399, 400, 780 N.Y.S.2d 593

(1st Dept. 2002).  However, a cause of action for breach of fiduciary duty can be

sustained if it is based on different facts than the malpractice cause of action.  See

Sage Realty Corp. v. Proskauer Rose L.L.P, 251 A.D.2d 35, 675 N.Y.S.2d 14 (1st Dept.

1998).

        To the extent that plaintiff alleges that any breach of fiduciary duty occurred in

the course of defendants' representation of her at trial, such a claim is clearly

duplicative of the malpractice claim and should be dismissed as such.  However,

plaintiff's claim that alleges breach of fiduciary duty based on defendants' filing of the

defamation suit is based on different facts than the malpractice cause of action.  Plaintiff

alleges that in filing the defamation suit, defendants appended a "discharge letter" which

was itself a client secret within the meaning of NYCRR § 1200.19.  Defendants argue

that they initially only published the first page of the letter, and that plaintiff herself

published the full text of the letter.  Defendants also argue that plaintiff has not shown

the requisite causation and actual damages.

    The Second Circuit has stated in LNC Investments, Inc. v. First Fidelity Bank,

N.A. New Jersey, 173 F.3d 454 (2d Cir 1999) that "where damages are sought for

breach of fiduciary duty under New York law, the plaintiff must demonstrate that the

defendant's conduct proximately caused injury in order to establish liability."  Id. at 465.

"In the absence of a causal link between [the defendant's] alleged wrongful conduct and

[the] plaintiff's alleged damages, the complaint must be dismissed."  Id. (citation

omitted).

6

Plaintiff seeks $361,964.71 in legal fees and other expenses associated with defending against the defamation suit as damages.  However, plaintiff does not show that the alleged breach of fiduciary duty was the cause of the alleged damages.  Even if defendants had safeguarded plaintiff's "family secrets" by sealing the dismissal letter when they filed the defamation suit, plaintiff would still have incurred the legal fees and costs.  It is evident that plaintiff was not so damaged because defendants disclosed client secrets in the form of the appended dismissal letter, but rather because she was sued in defamation by the defendants.

To the extent that plaintiff argues that the very act of filing a defamation suit by an attorney against a former client is a breach of fiduciary duty, her position is unsupported.  See Eckhaus v. Alfa-Laval, Inc., 764 F. Supp. 34 (S.D.N.Y. 1991).

For the above reasons, it is respectfully recommended that with respect to this claim, defendants' motion should be GRANTED.

### C.  Prima Facie Tort Claim

Prima facie tort is the intentional infliction of injury, by otherwise lawful means, without economic or social justification.  Morrison v. National Broadcasting Co., 24 A.D.2d 284, 266 N.Y.S.2d 406 (1st Dept. 1965).  The requisite elements for a crime of prima facie tort are: (1) The intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful.  Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143-44, 490 N.Y.S.2d 735 (1985).  "However, where relief may be afforded under traditional tort concepts, prima facie tort may not be invoked as a basis to sustain a pleading which

7

otherwise fails to state a cause of action in conventional tort." Id. (internal citations omitted). The plaintiff must also plead that the sole motivation for the act was "disinterested malevolence." Curiano v. Suozzi, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466 (1984).

Plaintiff claims that defendants maliciously instituted the defamation action against her, by using client secrets of their former client as the basis of the defamation action. She contends that defendants took such actions to coerce her through improper duress to abandon her claim to the escrow fund in the fee dispute. Defendants allege that this claim is barred by the statute of limitations, and fails to state a viable claim.

A claim for prima facie tort, an intentional tort, is subject to a one year statute of limitations. See Angel v. Bank of Tokyo-Mitsubishi, Ltd., 39 A.D.3d 369, 370, 835 N.Y.S.2d 57 (1st Dept. 2007); Yong Wen Mo v. Gee Min Chan, 17 A.D.3d 356, 358, 792 N.Y.S.2d 589, 591 (2d Dept. 2005). Plaintiff does not dispute the one year statute of limitations. Rather, plaintiff argues that the tort continued until the action was dismissed and so accrued upon the dismissal by the Appellate Division on January 4, 2007. Using this calculus, plaintiff points out that only a few months had passed between the January 4, 2007 final order in the defamation claim and the April 2007 filing of the instant action.

In so arguing, however, plaintiff confuses the elements of a prima facie tort with those of a claim for malicious prosecution. Because one of the requisite elements of a claim for malicious prosecution is that the underlying action was terminated in plaintiff's favor, the statute of limitations does not begin to accrue until the action is terminated. Obrien v. Alexander, 101 f.3d 1479, 1484 (2d Cir. 1996) (citing Broughton v. State, 37

8

N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310 (1975)).  There is no such requirement in a claim for prima facie tort.  Intentional torts generally accrue when the plaintiff is injured, as the statute of limitations was enacted to " afford protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action."  Siegel, N.Y. Prac. § 33. In fact, plaintiff's complaint claims that she was damaged by the prima facie tort when defendants "maliciously instituted the Defamation Action."

Plaintiff cites no authority to support her argument that the Court should extend the statute of limitations from the filing of the defamation action to the termination of the action.  As such, plaintiff's prima facie tort claim is barred by the applicable statute of limitations.  For the above reasons, it is respectfully recommended that with respect to this claim, defendants' motion should be GRANTED.

### D.  Intentional Infliction of Emotional Distress Claim

To establish a cause of action for the intentional infliction of emotional distress, plaintiff must plead: (1) an extreme and outrageous act by the defendant; (2) an intent to cause severe emotional distress; (3) resulting severe emotional distress; and (4) caused by the defendants' conduct.  Lish v. Harper's Magazine Foundation, 807 F. Supp. 1090, 1109 (S.D.N.Y. 1992).  In the instant case, plaintiff claims that defendants engaged in conduct exceeding all bounds of decency in using their position as attorneys to commence and prosecute a defamation action against their former client for the sole purpose of causing her extreme emotional , mental and financial distress and hardship

9

so as to cause her to abandon her fee dispute.

As an initial matter, defendants' alleged conduct, taken in the light most favorable and construed liberally in plaintiff's favor, falls well short of the outrageous conduct required under this claim.  Filing even a frivolous defamation suit under the alleged circumstances cannot be characterized as conduct "which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society."  Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143-44, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349, 355 (1985).  For the above reasons, it is respectfully recommended that with respect to this claim, defendants' motion should be GRANTED.

## IV.  CONCLUSION

For the reasons stated above, I respectfully recommend that defendants' motion for summary judgment be **GRANTED**.

## V.  NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v. Secretary of H.H.S., 892 F. 2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated: _____May 23_____, 2008          Respectfully Submitted,
        White Plains, New York

                                        _____
                                        GEORGE A. YANTHIS, U.S.M.J.