UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH MARGRABE,

                Plaintiff,

     -v-

SEXTER & WARMFLASH, P.C.,
DAVID WARMFLASH, and MICHAEL PRESENT,

                Defendants.

Case No. 07-CV-2798 (KMK) (GAY)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Crystal M. Massarelli, Esq.
Weber Dowd Law
West Paterson, New Jersey
*Counsel for Plaintiff*

William Greenberg, Esq.
Greenberg & Massarelli LLP
Purchase, New York
*Counsel for Plaintiff*

A. Michael Furman, Esq.
Furman Kornfeld & Brennan LLP
New York, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      On April 6, 2007, Plaintiff Elizabeth Margrabe ("Plaintiff") filed this diversity action,

seeking recovery from her prior counsel, Defendants Sexter & Warmflash P.C. ("Sexter &

Warmflash"), David Warmflash, and Michael Present (collectively, "Defendants"), for claims in

alleged legal malpractice, breach of fiduciary duty, prima facie tort, and intentional infliction of

emotional distress.  Before the Court are Defendants' collective motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6), as well as Plaintiffs' objection to Magistrate Judge

Yanthis's denial of Plaintiff's Motion to Stay or Remove the Action pending the resolution of a motion to reargue and an appeal of a New York Supreme Court proceeding.

## I.  Background

### A.  Facts

Although the Court will assume the Parties' general familiarity with the factual and procedural background of this case as set forth in Magistrate Judge George Yanthis's Report & Recommendation dated May 23, 2008 ("R&R"), the Court will briefly summarize the facts most salient to these Motions.[1]  In considering Defendants' Motion to Dismiss, the Court assumes the facts taken from Plaintiff's Complaint to be true.[2]

This case arises out of Defendants' representation of Plaintiff in a shareholder derivative suit brought in New York Supreme Court, Westchester County, *Margrabe, et al. v. Rusciano, et al.*, Index No. 10032/01 (N.Y. Sup. Ct. 2001) (the "*Rusciano* Lawsuit"), presided over by Justice W. Denis Donovan.  (Compl. ¶ 19.)  Plaintiff and her brother, Anthony Rusciano III ("Tony

---

[1] On the same day that Plaintiff's Complaint was filed, this case was referred to Magistrate Judge Yanthis for all purposes by Chief Judge Kimba Wood.  The case was not assigned to this Court until August 6, 2007.

[2] The Complaint refers to the state court proceedings in *Margrabe, et al. v. Rusciano, et al.*, Index No. 10032/01 (N.Y. Sup. Ct. 2001), and *Sexter & Warmflash, P.C. v. Margrabe*, Index No. 107569/04 (N.Y. Sup. Ct. 2004), and thereby incorporates the judicial rulings and transcripts of those proceedings by reference.  *See Hernandez v. Carbone*, 567 F. Supp. 2d 321, 326 n.2 (D. Conn. 2008) (incorporating bail hearing transcripts by reference where plaintiff had referred to bail hearings in the amended complaint).  Further, the Court may take judicial notice of, and therefore may consider for purposes of this motion, the documents filed in the state court proceedings.  *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (noting that it is proper to take judicial notice of fact that assertions were made in lawsuits and regulatory filings); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)).

Rusciano"), retained the Defendant law firm Sexter & Warmflash to prosecute the *Rusciano* Lawsuit against their cousin, Anthony J. Rusciano II.  (*Id.* ¶¶ 14-15, 19.)  The parties settled the *Rusciano* Lawsuit on May 10, 2004, with Plaintiff agreeing to sell her interests in the Rusciano family business as part of the settlement agreement.  At the settlement proceedings, Plaintiff acknowledged that she understood the terms of the settlement and was "very pleased" with its terms and with her representation by Sexter & Warmflash.  (Aff. of A. Michael Furman ("Furman Aff."), Ex. C (Tr. of *Rusciano* Proceedings (June 18, 2003) 38); Compl. ¶ 23.)  As a result of the settlement, Plaintiff received consideration in the amount of $4,187,500.  (Compl. ¶ 21.)  Following the settlement, Plaintiff terminated her employment of Defendants in a letter dated April 9, 2004 (the "Discharge Letter").  (*Id*. ¶ 34.)

On May 14, 2004, Sexter & Warmflash commenced a N.Y. Judiciary Law § 475 fee dispute proceeding against Plaintiff in New York Supreme Court, Westchester County (the "Fee Dispute").  (Compl. ¶ 37.)  Plaintiff opposed Sexter & Warmflash's application for fees on the basis that:  (1) the Retainer Agreement entered into between the Plaintiff and Sexter & Warmflash was "unreasonable, excessive, and usurious"; and (2) that Sexter & Warmflash acted in conflict with and adverse to the interests of Plaintiff while serving the interests of its other joint client, Plaintiff's brother, Tony Rusciano.  (Furman Aff., Ex. P (*Rusciano*, Index No. 10032/01, Decision and Order 3-5 (N.Y. Sup. Ct. July 9, 2007)).)  The New York Supreme Court twice found in favor of Sexter & Warmflash, on September 1, 2004 and August 22, 2005, but later granted a motion to renew by Plaintiff on June 29, 2006.  (*Id*. 2-3.)  Plaintiff placed $121,659.74 in escrow pending a determination of the Fee Dispute between the parties.  (Compl. ¶ 36.)  On July 9, 2007, Justice Donovan reinstated his original finding that Sexter & Warmflash

3

was not terminated for cause and was entitled to the full amount of fees.  Plaintiff subsequently

filed a motion to reargue the New York Supreme Court decision, which was denied by Justice

Donovan (Dkt. No. 27), and a Notice of Appeal to the Appellate Division that was also denied

on October 14, 2008 (Letter from A. Michael Furman, Esq. to the Court (Oct. 20, 2008)

(attaching *Margrabe v. Rusciano*, 865 N.Y.S.2d 339 (App. Div. 2008))).  On January 20, 2009,

the Court of Appeals denied Plaintiff's leave to appeal the October 14, 2008 decision by the

Appellate Division.  (Letter from A. Michael Furman, Esq. to the Court (Jan. 22, 2009)

(attaching January 20, 2009 Decision and Order by the New York State Court of Appeals).)

On or about May 17, 2004, Sexter & Warmflash filed a defamation action, *Sexter &*

*Warmflash, P.C. v. Margrabe*, Index No. 107569/04 (N.Y. Sup. Ct. 2004) (the "Defamation

Action"), against Plaintiff and her husband premised on the Discharge Letter, which contained

quotations from the Discharge Letter and annexed it as an exhibit.  (Compl. ¶¶ 39-40.)  On

March 17, 2005, the Supreme Court denied a motion to dismiss by Plaintiff and her husband and

granted Sexter & Warmflash's cross motion for partial summary judgment as to liability with

respect to the portion of Sexter & Warmflash's defamation claims based on accusations of usury.

*See Sexter & Warmflash, P.C. v. Margrabe*, 828 N.Y.S.2d 315, 322 (App. Div. 2007).  On

January 4, 2007, the Appellate Division reversed the state supreme court's ruling and dismissed

the case with prejudice.  *See id.* at 327-28.[3]

---

[3] In their motion to dismiss in New York Supreme Court, Plaintiff and her husband
claimed that the contents of the Discharge Letter were client confidences or secrets, within the
meaning of Rule 4-101 of the New York Code of Professional Responsibility, N.Y. Comp.
Codes R. & Regs. tit. 22, § 1200.19 (2009) ("Rule 4-101").  The Margrabes also argued that the
Discharge Letter was protected by the common interest privilege.  Finally, they argued that the
Discharge Letter did not constitute a publication for purposes of a defamation action.  Judge
Shirley Werner Kornreich, New York Supreme Court, denied the Margrabes' motion to dismiss

B.  Procedural History

Plaintiff filed her action in this Court on April 6, 2007, alleging legal malpractice, breach of fiduciary duty, prima facie tort, and intentional infliction of emotion distress.

On October 26, 2007, Plaintiff moved to stay or transfer the action to the suspense calendar pending the resolution of Plaintiff's motion to reargue and notice of appeal in New York state court regarding the Fee Dispute.  (Dkt. No. 13.)  In an Order issued the same day as the R&R, Magistrate Judge Yanthis denied this motion.  (Dkt. No. 27.)  On October 29, 2007, Defendants filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking an order to dismiss Plaintiff's Complaint because:  (1) res judicata and collateral estoppel precluded Plaintiff's claims; (2) Plaintiff's claims are time-barred; and (3) Plaintiff fails to allege any cognizable cause of action as a matter of law.  In the R&R, Magistrate Judge Yanthis recommended that Defendants' motion to dismiss be granted.  Plaintiff timely filed objections to the R&R and a timely appeal of Magistrate Judge Yanthis's denial of Plaintiff's Motion to Stay on June 2, 2008.  (Dkt. Nos. 28 & 29.)

---

on these grounds and granted Sexter & Warmflash's motion for partial summary judgment.  *See Sexter & Warmflash v. Margrabe*, Index No. 107569/04, Decision & Order (N.Y. Sup. Ct. Mar. 17, 2005).  In particular, Judge Kornreich found that the express refusal by one of the third-party attorneys copied on the Discharge Letter to represent Plaintiff in her fee dispute with Sexter & Warmflash proved that the attorney-client privilege did not apply to the Discharge Letter, because it had been sent to a third party.  *Id.* at 15-16.  Judge Kornreich also held that Sexter & Warmflash was not prohibited by Rule 4-101 from instituting the Defamation Action based on the allegations in the Discharge Letter because it was a termination letter and third parties were copied.  *Id.* at 18-19.  The Appellate Division reversed and dismissed Sexter & Warmflash's complaint, holding that the "limitation of the scope of [the third party attorney's] representation" did not defeat the application of the judicial proceedings privilege to the Discharge Letter – an argument that had not been raised by the Margrabes in their motion to dismiss.  *Sexter & Warmflash*, 828 N.Y.S.2d at 326-27.  However, the Appellate Division "expressly decline[d] to consider" Judge Kornreich's holding that the Discharge Letter was not a client confidence or secret, the disclosure of which would be barred by Rule 4-101.  *Id.* at 328.

For the reasons set forth below, the Court grants Defendants' motion.  The Court is also not reversing Magistrate Judge Yanthis's Order denying Plaintiff's stay application.

## II.  Discussion

### A.  Standard of Review

#### 1.  Review of Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'"  28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition."  *Id.*; *see also* 28 U.S.C. § 636(b)(1).

Where a party submits timely objections to a report and recommendation, as Plaintiff has here, the district court reviews de novo the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1.  The district court "may adopt those portions of the . . . report [and recommendation] to which 'no specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *See Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

With regard to a magistrate judge's decision on a non-dispositive matter, "[t]he district

judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (the "judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").[4]  The magistrate judge's findings may be considered "clearly erroneous" where, "'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'"  *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  Under this "highly deferential" standard of review, "magistrates are afforded broad discretion in resolving [non-dispositive] disputes and reversal is appropriate only if their discretion is abused."  *Derthick v. Bassett-Walker Inc.*, Nos. 90-CV-5427, 90-CV-7479 & 90-CV-3845, 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992).

### 2.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted and second alteration in original).

---

[4] Plaintiff's motion to stay was non-dispositive and therefore within the scope of Magistrate Judge Yanthis's general pretrial referral.  *See Crane v. Poetic Prods., Ltd.*, 549 F. Supp. 2d 566, 568 (S.D.N.Y. 2008) (noting that defendant's motion to stay was non-dispositive and therefore within the scope of magistrate judge's general pre-trial referral); *SDD99, Inc. v. ASA Int'l, Ltd.*, No. 06-CV-6089, 2007 WL 952046, at *2 n.2 (W.D.N.Y. Mar. 29, 2007) (stating that motions to stay litigation are non-dispositive and thus within a magistrate judge's jurisdiction to determine); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1080 (S.D.N.Y. 1990) (finding that a motion is non-dispositive if it does not resolve the substantive claims for relief alleged in the pleadings).

In *Twombly*, *id.* at 1964-69, the Supreme Court also abandoned reliance on the oft-cited line from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  As the Court explained, a literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Twombly*, 127 S. Ct. at 1968 (alteration in original).  Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . [,]" *id.* at 1965, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" *id.* at 1969.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  If Plaintiff "[has] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."  *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." (emphasis in original)).

A Rule 12(b)(6) motion to dismiss requires a court to "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs."  *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998); *see also Blimpie Int'l, Inc. v. Blimpie of*

8

*the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005).  "'In adjudicating a Rule 12(b)(6)

motion, a district court must confine its consideration 'to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken.'"  *Glidepath Holding B.V. v.*

*Spherion Corp.*, No. 04-CV-9758, 2007 WL 2176072, at *10 (S.D.N.Y. July 26, 2007) (quoting

*Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).

    B.  Analysis

        1.  Plaintiff's Motion to Stay or Transfer the Action

        Plaintiff requested that this Court reverse Magistrate Judge Yanthis's May 23, 2008

Order and stay all proceedings in this case pending:  (1) the determination of the appeal of New

York Supreme Court Justice Donovan's Order that the legal fees charged by Defendant to

Plaintiff were reasonable; and (2) the decision of the New York Supreme Court regarding

Plaintiff's motion to reargue.  Plaintiff argued that the "unique procedural circumstances of this

case" weigh toward staying the proceedings.  (Pl.'s Objection to Mag. Judge Yanthis's Order

Denying Pl.'s Mot. for a Stay ("Pl.'s Stay Obj.") 1.)  Specifically, Plaintiff argued that if the

proceedings were not stayed, her legal malpractice claims would be barred by res judicata, and,

if the appellate court later overturned the New York state court decision, the statute of

limitations would have run on those claims.  (*Id.* 2.)  Since Plaintiff's objection, both the

Appellate Division and the Court of Appeals have affirmed the New York Supreme Court

decision holding that Sexter & Warmflash was entitled to its legal fees.  Plaintiff has

acknowledged to the Court that the Court of Appeals decision signifies that her legal malpractice

claim is barred under New York State law by the doctrine of res judicata.  (Letter from William

Greenberg, Esq. to the Court (Jan. 30, 2009).)  Plaintiff's objection and motion to stay/transfer therefore have been rendered moot.

### 2.  Motion to Dismiss

#### a.  Legal Malpractice Claim

Plaintiff claims that Defendants failed to exercise the degree of skill and knowledge commonly possessed by members of the legal profession in their representation of her in the *Rusciano* Lawsuit.  (Compl. ¶ 27.)

In the R&R, Magistrate Judge Yanthis recommended that the Court grant Defendants' Motion to Dismiss Plaintiff's legal malpractice claim on res judicata and collateral estoppel grounds.  (R&R 4-5.)

Although Plaintiff initially objected to Magistrate Judge Yanthis's recommendation (Pl.'s Objections to R&R ("Pl.'s Obj.") 4), Plaintiff has since acknowledged to the Court that, based on the Court of Appeals' denial of Plaintiff's appeal, her legal malpractice claim "is barred under New York State law by the doctrine of *res judicata*."  (Letter from William Greenberg, Esq. to the Court (Jan. 30, 2009).)

The Court agrees that, in New York, a judgment "fixing the value of a professional's service necessarily decides that there was no malpractice."  *Lipani v. Collins, Collins & Dinardo, P.C.*, No. 90-CV-5278, 1992 WL 168267, at *3 (S.D.N.Y. June 25, 1992) (quoting *Nat Kagan Meat & Poultry, Inc. v. Kolter*, 416 N.Y.S.2d 646, 647 (App. Div. 1979)); *accord Best v. Law Firm of Queller & Fischer*, 718 N.Y.S.2d 397, 397 (App. Div. 2000) (holding that plaintiffs were "precluded from asserting a cause of action alleging malpractice" against the defendant law firm inasmuch as the New York Supreme Court had found that law firm was entitled to its

agreed-upon legal fee).[5]  Here, it is undisputed that the Plaintiff's legal malpractice claim is precluded by the state supreme court decision that Sexter & Warmflash was entitled to its reasonable legal fees.  Accordingly, Plaintiff's malpractice claim is dismissed as barred by the doctrines of res judicata and collateral estoppel.

<u>b.  Breach of Fiduciary Duty Claim</u>

Plaintiff claims that Defendants breached their fiduciary duty by improperly disclosing the Discharge Letter (which Plaintiff claims constitutes a client secret within the meaning of Rule 4-101 of the New York Code of Professional Responsibility, N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.19 (2009) ("Rule 4-101")), when they appended the letter to the Defamation Action and revealed other allegedly privileged information during the prosecution of the Defamation Action.[6]  (Compl. ¶¶ 34-41.)  Plaintiff also claims that Defendants breached their fiduciary duty by acting in conflict with her interests during their representation of her in the *Rusciano* Lawsuit.  (*Id.* ¶ 43.)  Plaintiff claims that, as a result, she sustained damages in the form of the legal fees and other expenses incurred in defending the Defamation Action and the § 475 Fee Dispute.  (*Id.* ¶ 44.)

In the R&R, Magistrate Judge Yanthis found that Plaintiff's allegations that Defendants breached their fiduciary duty during the course of their representation of her in the *Rusciano*

---

[5] The Parties appear to agree that New York law governs this dispute.

[6] The Court does not construe Plaintiff's claim, and Plaintiff's documents do not characterize her claim, to be that the mere filing of a defamation action is a breach of Defendants' fiduciary duty.  Indeed, Plaintiff has presented no authority for such a proposition, and the Court is aware of other defamation actions brought by law firms against their former clients.  *See, e.g.*, *Tory v. Cochran*, 544 U.S. 734 (2005); *Desalvatore v. Washburn*, 747 N.Y.S.2d 695 (Sup. Ct. 2005).

Lawsuit were duplicative of her malpractice claim and should be dismissed as such.  (R&R 6.)

This recommendation plainly comports with the law and therefore is adopted.  *See Weil, Gotshal*

*& Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (App. Div.

2004) (noting that New York courts have "consistently held that [a claim for breach of fiduciary

duty], premised on the same facts and seeking the identical relief sought in the legal malpractice

cause of action, is redundant and should be dismissed"); *cf. Ulico Cas. Co. v. Wilson, Elser,*

*Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 21 (App. Div. 2008) (denying summary

judgment where plaintiff's fiduciary duty claim was not based on the same facts or seeking the

same relief as its legal malpractice claim).[7]

Further, Magistrate Judge Yanthis found that Plaintiff has not established a causal

connection between Defendants' alleged breach of fiduciary duty and the damages she allegedly

sustained.  (R&R 7.)  Magistrate Judge Yanthis concluded that the damages claimed by Plaintiff

(legal costs incurred in defending the Defamation Action) would have been incurred even if

Defendant Sexter & Warmflash had not attached the Discharge Letter to its pleadings in the

---

[7] Plaintiff argues that the Appellate Division's decision, affirming the state supreme court's determination that Defendants were entitled to their legal fees, supports Plaintiff's breach of fiduciary duty claim because it identifies conduct on the part of Sexter & Warmflash that violated the New York disciplinary rules.  (Letter from William Greenberg, Esq. to the Court (Jan. 30, 2009).)  Specifically, the Appellate Division stated that Sexter & Warmflash "knew or should have known" that its conduct in loaning money to Plaintiff's brother violated the New York disciplinary rules.  *See Margrabe*, 865 N.Y.S.2d at 341.  However, the Appellate Division decision went on to state that this was "not a case where the law firm's four-year representation of the parties was improper from the inception," and "[i]n fact, the law firm properly exercised its fiduciary duty to Betty and Tony from the time it commenced representation up until the time that the . . . loan was advanced . . . and no claim is made by [Sexter & Warmflash] for work performed after that date."  *Id.* at 341-42.  Accordingly, the Court finds that the Appellate Division's decision does not provide support for any of Plaintiff's claims, including her breach of fiduciary duty and legal malpractice claims.

Defamation Action.  (*Id.*)  As a result, Magistrate Judge Yanthis recommended granting Defendants' motion to dismiss the breach of fiduciary duty claim.  (*Id.*)  The Court concurs with Magistrate Judge Yanthis's recommendation to dismiss Plaintiff's breach of fiduciary duty, but on different grounds set forth below.

In New York, a plaintiff must plead and prove the following in order to succeed in a breach of fiduciary duty claim:  (1) that a fiduciary duty existed between the Parties; (2) that the Defendant breached that duty; and (3) that damages were incurred as a result.  *See SCS Commc'ns, Inc.  v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004).

Plaintiff alleges that the Defamation Action was a breach of fiduciary duty because it was "premised solely and wholly upon a client secret."  (Pl.'s Obj. 4-5.)  Further, Plaintiff contends that her damages (the legal expenses she incurred in the Defamation Action) were proximately caused by the actual filing and prosecution of the Defamation Action.  However, the state supreme court, in a ruling that the Appellate Division "expressly decline[d]" to reconsider, held that the Discharge Letter was *not* a client confidence or secret.  *See Sexter & Warmflash*, 828 N.Y.S.2d at 328.  The Appellate Division also declined to reconsider the state supreme court holding that, because the Discharge Letter was a termination letter and was copied to third parties, Sexter & Warmflash "was not prohibited by violation of Rule 4-101 from instituting [the Defamation Action] based on the allegations contained in the letter."  *See Sexter & Warmflash v. Margrabe*, Index No. 107569/04, Decision & Order, at 19 (N.Y. Sup. Ct. Mar. 17, 2005); *see also Sexter & Warmflash*, 828 N.Y.S.2d at 328.[8]  The Court agrees with the state supreme

---

[8] We should reiterate that the Appellate Division reversed on grounds not argued by Plaintiff, namely, the judicial proceedings privilege.

court's determination and therefore finds that Defendants did not breach their fiduciary duty to

Plaintiff, their former client, by filing the Defamation Action based on the Discharge Letter.  The

Discharge Letter was copied to third parties and sent to Sexter & Warmflash for the purpose of

discharging the firm, not for the purpose of obtaining legal advice, and is therefore not a client

confidence or secret.[9]  Accordingly, Plaintiff has failed to state a claim for breach of fiduciary

duty.

Thus, the Court concludes that Plaintiff's claim for breach of fiduciary duty should be

dismissed.

_____

[9] A client "'confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested to be held inviolate or the disclosure of which would be embarassing or would likely be detrimental to the client."  22 N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.19(a) (2009).  The "attorney-client privilege affords confidentiality to communications among clients and their attorneys, for the purpose of seeking and rendering an opinion on law or legal services, or assistance in some legal proceeding, so long as the communications were intended to be, and were in fact, kept confidential."  *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01-CV-8854, 2006 WL 1004472, at *2 (S.D.N.Y. Apr. 17, 2006) (citing *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)); *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04-CV-2271, 2006 WL 3771010, at *4 (S.D.N.Y. Dec. 15, 2006) (same).  Significantly, "the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclose any significant part of the communication to a third party . . . ."  *Urban Box Office Network, Inc.*, 2006 WL 1004472, at *3.
The Discharge Letter, which was sent by Plaintiff's husband on her behalf, copied Plaintiff's brother, and two other attorneys who Plaintiff had retained for independent advice. *See Sexter & Warmflash*, 828 N.Y.S.2d at 317.  One of the attorneys copied, Philip Halpern, had told Plaintiff that he had worked for David Warmflash earlier in his career and specifically could not represent Plaintiff in her fee dispute. *See id.* at 319.  As a result, Halpern was not acting as Plaintiff's counsel with respect to the subject matter of the Discharge Letter, and was therefore neither providing nor being asked for legal advice.  Additionally, the Discharge Letter's purpose was to terminate Sexter & Warmflash from their representation of Plaintiff, and, therefore, the communication was not one where legal advice was sought or given. *See Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.*, No. 05-CV-622810, 2008 WL 622810, at *2 (S.D.N.Y. Mar. 7, 2008) (noting that attorney-client privilege only applies where the purpose of the communication is to provide or solicit legal advice); *Urban Office Network, Inc.*, 2006 WL 1004472, at *4 (same).

<u>c.  Prima Facie Tort Claim</u>

Plaintiff alleges that Defendants "without any excuse or justification" maliciously instituted the Defamation Action against Plaintiff, to coerce Plaintiff "through improper duress – an intentional infliction of harm – to abandon her claim to [the disputed fees]."  (Compl. ¶ 48.) Plaintiff claims that she is entitled to special damages, "including, but not limited to the expenditure of substantial sums for legal fees and other expenses incurred by [her] in defending the [Defamation Action] and damages for the extreme mental distress and anxiety caused to [her]."  (*Id.* ¶ 50.)  Plaintiff additionally seeks punitive damages in relation to this claim.  (*Id.* ¶ 52.)

In the R&R, Magistrate Judge Yanthis recommended that Plaintiff's prima facie tort claim be dismissed, as it is barred by the one-year statute of limitations applicable to intentional torts.  Magistrate Judge Yanthis stated that intentional torts, such as a prima facie tort claim, generally accrue when the cause of injury arose, to "afford protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action."  (R&R 9.)  The Court concurs with Magistrate Judge Yanthis's determination that the Plaintiff is time-barred and finds, in addition, that Plaintiff has not adequately pled a claim for prima facie tort.

Plaintiff argues that the statute of limitations for her prima facie tort claim was tolled under the continuing wrong doctrine, and, as a result, her claim is not barred.  Specifically, Plaintiff claims that because she was continuously harmed (i.e., by incurring legal costs throughout her defense of the Defamation Action), the statute of limitations did not accrue until the disposition of the Defamation Action.  (Pl.'s Obj. 5-6.)

15

The statute of limitations for a prima facie tort is one year – a point Plaintiff does not contest. *See McKenzie v. Dow Jones & Co.*, No. 08-CV-3623, 2008 WL 2856337, at *4 (S.D.N.Y. July 22, 2008) (holding that one-year statute of limitations applies to intentional tort claims styled as prima facie tort); *Yong Wen Mo v. Gee Ming Chan*, 792 N.Y.S.2d 589, 591 (App. Div. 2005) (applying one-year statute of limitations to prima facie tort claim). The continuing wrong doctrine provides that, in certain cases involving continuous or repeated wrongs, the statute of limitations accrues upon the date of the last wrongful act. *See Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 88 (2d Cir. 2003) ("[I]n certain tort cases involving continuous or repeated injuries, the statute of limitations accrues upon the date of the last injury . . . ." (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002))); *Leonhard v. United States*, 633 F.2d 599, 613 ("[A] claim to redress a continuing wrong will be deemed to have accrued on the date of the last wrongful act."). However, the doctrine "may only be predicated on continuing unlawful [wrongs] and not on the continuing effects of earlier [wrong]ful conduct." *Selkirk v. State*, 671 N.Y.S.2d 824, 825 (App. Div. 1998) (rejecting argument that continuing wrong doctrine applied where plaintiff alleged that she continued to suffer effects of property seizure); *cf. Shelton v. Elite Model Mgmt.*, 812 N.Y.S.2d 745, 758 (Sup. Ct. 2005) (applying continuing wrong doctrine where defendants violated statute every time they charged plaintiffs a higher fee than allowed under law).

Here, Plaintiff claims that the legal costs she has incurred in defending the Defamation Act are continuing harms that should toll the statute of limitations. However, her legal costs are predicated on a single allegedly wrongful act – the filing of the Defamation Suit, and that lawsuit was filed in May 2004, almost three years before Plaintiff filed this action. As a result, the Court

agrees with Magistrate Judge Yanthis's conclusion that Plaintiff's claim is barred by the statute of limitations.

Even if Plaintiff's claim was not time-barred, the Court finds that Plaintiff has failed to state a claim that would support a finding of prima facie tort.  In order to succeed on a prima facie tort claim, Plaintiff must prove:  (1) the intentional infliction of harm, (2) resulting in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful.  *See Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 355 (N.Y. 1985); *see also Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02-CV-9567, 2003 WL 22410623, at *6 (S.D.N.Y. Oct. 21, 2003) (same).

To prevail on a prima facie tort claim, Plaintiff must plead that the only motivation for the act was "disinterested malevolence."  *See Pandian v. N.Y. Health & Hosp. Corp.*, 863 N.Y.S.2d 668, 669-70 (App. Div. 2008) (dismissing plaintiff's prima facie tort claim where plaintiff failed to allege that malevolence was defendants' sole motivation); *see also Curiano v. Suozzi*, 480 N.Y.S.2d 466, 469 (App. Div. 1984) (finding that the "sole" motivation for defendant's actions must be one of malevolence).  Here, Plaintiff has not sufficiently pled that Defendants acted with malevolence as their sole motivation when Sexter & Warmflash filed the Defamation Action.  In fact, Plaintiff pleads herself out of this cause of action by claiming that Defendants' motivation was to influence her to abandon her claims to the escrow funds at issue in the separate Fee Dispute.  (Compl. ¶ 48.)  In other words, Plaintiff's own allegation is that Defendant Sexter & Warmflash initiated the Defamation Action to leverage its § 475 litigation to obtain Defendants' fees.  This is fatal to Plaintiff's claim because New York courts have specifically held that economic motives, such as profit, self-interest or business advantage,

cannot form the basis for a prima facie tort claim.  *See Oxyn Telecommc'ns, Inc. v. Onse Telecom*, No. 01-CV-1012, 2003 WL 22271224, at *9 (S.D.N.Y. Sept. 30, 2003) (citing *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990)); *see also Pandian*, 863 N.Y.S.2d at 670 (dismissing claim where it "failed to allege a motive . . . other than self-interest or other economic considerations" (internal citations omitted)); *Squire Records, Inc. v. Vanguard Recording Soc'y, Inc.*, 268 N.Y.S.2d 251, 253-54 (App. Div. 1966) ("Where there are other motives, e.g., profit, self-interest, business advantage, there is no recovery under tort [p]rima facie."), *aff'd*, 226 N.E.2d 542 (N.Y. 1967)).  Further, New York courts consistently have also refused to allow retaliatory lawsuits claiming a prima facie tort that are predicated on the malicious institution of a prior civil action.  *See Curiano*, 480 N.Y.S.2d at 469 (citing long line of cases dismissing retaliatory suits based on prima facie tort claims).  Here, Plaintiff acknowledges that the prima facie tort claim arose when Sexter & Warmflash "maliciously instituted the Defamation Action."  (Compl. ¶ 48.)

Because Plaintiff did not file her claim within the one-year statute of limitations for a prima facie tort and because Plaintiff has failed to state a claim for prima facie tort, the Court concurs with the judgment of Magistrate Judge Yanthis that the prima facie tort claim should be dismissed.

### d.  Intentional Infliction of Emotional Distress Claim

Plaintiff claims that Defendants used "their position as attorneys" to pursue the Defamation Action for the sole purpose of causing her extreme emotional, mental and financial distress so as to cause her to abandon her claims in the Fee Dispute.  (Compl. ¶ 54.)  By reason of Defendants' alleged intentional infliction of emotional distress, Plaintiff claims damages for

18

the substantial sums of legal fees and other expenses she incurred in defending the Defamation

Action, as well as punitive damages.  (*Id.* ¶¶ 56-58.)

Magistrate Judge Yanthis recommended dismissal of this claim because Defendants's

alleged conduct, "taken in the light most favorable and construed liberally in [P]laintiff's favor,

falls well short of the outrageous conduct required under this claim."  (R&R 10.)  In fact,

Magistrate Judge Yanthis concluded that the filing of even a frivolous defamation suit under the

alleged circumstances could not sustain an intentional infliction of emotional distress claim.

(*Id.*)

In her objections to the R&R, Plaintiff claims that the Complaint adequately alleged

intentional infliction of emotional distress by stating that Defendants intentionally commenced a

frivolous and ungrounded action against a former client (Plaintiff) for the purpose of forcing her

to abandon her opposition to Defendants' reimbursement demand.  (Pl.'s Obj. 6.)  Plaintiff

further objects to Magistrate Judge Yanthis's characterization of the harmful conduct as the

"mere presentment of a frivolous lawsuit."  (*Id.* 7.)  Rather, Plaintiff argues that the complained-

of conduct consisted of Defendants' intentional use of client secrets "to seek to coerce and

compel their former client to cease any resistance to the completely unjustified demands for

excessive compensation."  (*Id.*)

Under New York law, to prove intentional infliction of emotional distress, Plaintiff must

plead:  (1) an extreme and outrageous act by Defendants; (2) with an intent to cause severe

emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe

emotional distress.  *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *accord*

*Haque v. Am. Airlines, Inc.*, No. 08-CV-5246, 2008 WL 5110852, at *5 (S.D.N.Y. Nov. 26,

2008).  The extreme and outrageous conduct must "so transcend 'the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'"  *Stanton v. Carrara*, 813 N.Y.S.2d 515, 515 (App. Div. 2006) (quoting *Freihofer*, 480 N.E.2d at 355); *accord Lish v. Harper's Magazine Found.*, 807 F. Supp. 1090, 1109 (S.D.N.Y. 1992).  Therefore, "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress."  *Bender,* 78 F.3d at 790.

Accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor, the Court finds that Plaintiff has not sufficiently pled the conduct required under New York law to survive a motion to dismiss.  Defendant Sexter & Warmflash's filing of the Defamation Action allegedly for the purpose of pressuring Plaintiff to abandon her counterclaims in the Fee Dispute is not the type of "extreme" and "outrageous" conduct necessary to survive a motion to dismiss.  *See Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, No. 06-CV-0672, 2007 WL 121431, at *6 (E.D.N.Y. Jan. 12, 2007) ("To survive a motion to dismiss, the conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant." (internal quotation marks omitted)).  Indeed, New York courts have dismissed intentional infliction of emotional distress claims based on allegations more eye-opening than the facts alleged by Plaintiff.  *See, e.g.*, *Andrews v. Bruk*, 631 N.Y.S.2d 771, 772 (App. Div. 1995) (dismissing intentional infliction of emotional distress claim by plaintiff based on defendant's use of hospital documents in separate matrimonial action to show that plaintiff had undergone a vasectomy); *Leibowitz v. Bank Leumi Trust Co. of New York*, 548 N.Y.S.2d 513, 521 (App. Div. 1989) (affirming dismissal of intentional infliction of emotional distress claim based on use of "deplorable and reprehensible" ethnic and racial slurs).  Here, all Sexter &

20

Warmflash did was file a defamation action.  While our society may be too litigious, Defendants'

legal actions hardly qualify as atrocious, intolerable, egregious, despicable, or heartless.

Accordingly, the Court agrees with Magistrate Judge Yanthis's recommendation and

holds that Plaintiff has failed to state a claim which would support a finding of intentional

infliction of emotion distress.  This cause of action is therefore dismissed with prejudice.

### III.  Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss for Failure to State a Claim

is granted with prejudice.  Further, Plaintiff's Motion to Stay is denied with prejudice.  The

Clerk of the Court is respectfully directed to terminate the pending motion (Dkt. No. 15) and to

close the case.

SO ORDERED.

Dated:          February 9, 2009
                White Plains, New York

                                                    _____
                                                    KENNETH M. KARAS
                                                    UNITED STATES DISTRICT JUDGE

Service List (By ECF):
Crystal M. Massarelli
Weber Dowd Law
365 Rifle Camp Road
West Paterson, N.J. 07424
Email: crystal@greenbergmassarelli.com
*Counsel for Plaintiff*

William Greenberg
Greenberg & Massarelli LLP
2929 Purchase Street
Purchase, N.Y. 10577
*Counsel for Plaintiff*

A. Michael Furman
Furman Kornfeld & Brennan LLP
545 Fifth Avenue, Suite 401
New York, N.Y. 10017
*Counsel for Defendants*